(C. D. 640)

J. S. STAEDTLER, INC. v. UNITED STATES

## United States Customs Court, First Division

(Decided June 3, 1942)

*Strauss & Hedges* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Francis X. O'Donnell, Jr.*, special attorney), for the defendant.

### Before OLIVER and WALKER, Judges

WALKER, Judge: These suits, which were consolidated for trial and disposition, relate to the assessment of duty on merchandise described on one invoice as "refill leads, 6⅞″ length," and on the other invoice as "copying leads, 1.17–1.19 mm, 6⅞″ length." It was assessed with duty by the collector of customs at the rate of 34.375 cents per gross under the provision in paragraph 1549 (b) of the Tariff Act of 1930 for—

\* \* \* leads, commonly known as refills, black, colored, or indelible, not exceeding six one-hundredths of one inch in diameter and not exceeding two inches in length, 10 cents per gross, and longer leads shall pay in proportion in addition thereto; \* \* \*.

The claim in each of the protests is for duty at the rate of 40 per centum ad valorem under the following provision in the same paragraph:

\* \* \* colored or crayon leads, copy or indelible leads, not specially provided for, \* \* \*.

There does not appear to be any question but that the diameter of the imported leads is approximately .0465 inches, and that they are copy or indelible leads. The sole question presented for decision, therefore, is whether or not they are "leads, commonly known as refills."

On behalf of the plaintiff the general manager of the importing firm, which is engaged in the business of manufacturing and importing pencils and leads, testified that in his experience "leads, commonly known as refills" are leads that are used to refill mechanical pencils. This understanding is in accord with that of defendant's witness Reckford, who testified that he was president of two companies and a director of others the business of which was the manufacture of stationery articles, including mechanical pencils and refill leads. Defendant's witness Erickson, assistant sales manager of a company manufacturing pencil leads, defined a refill lead as one used in a mechanical pencil or clutch pencil, although refills for the latter, he said, are of a diameter larger than %₀₀ of an inch. Both of defendant's witnesses, however, added that any lead which was of a diameter to be used in a mechanical pencil was a "refill lead," regardless of its length.

All of the witnesses were agreed that the leads in issue cannot be used as refills for mechanical pencils in the condition as imported for the reason that they are too long, it being the testimony of each of the witnesses that the longest lead sold to the public as a refill is 5 inches long, and that there is no mechanical pencil on the market which uses leads 6⅞ inches long, the length of the leads in issue.

It appears that after importation the leads in issue are cut into lengths of 1⅞ inches or 4 inches and are packed and sold in that condition. The contention of the plaintiff is that the record establishes that the merchandise at bar is not "leads, commonly known as refills" but is merely material from which such leads may be made. On the other hand, defendant claims that the record establishes that question of whether or not a lead is a refill is determined by its susceptibility for use in mechanical pencils and the diameter of the lead, the length thereof having no bearing on the determination.

We are of the opinion that the key to the determination of the issue is to be found in the language used by Congress, namely, "leads, *commonly known as refills."* In *United States* v. *Stone & Downer Co.,* 274 U. S. 225, one of the questions at issue was the meaning to be ascribed to the words "wools, commonly known as clothing wool." In the course of the majority opinion written by Mr. Chief Justice Taft, the following was said:

> The natural and usual meaning of the words "clothing wool" is wool for clothing. That is what the non-expert reader of the words would understand until he was advised of a different meaning by reason of the language of the trade. When, therefore, the words are used *"commonly known as* clothing wools," the ordinary inference from the collocation of the words is that they refer to wool that is used in making clothing. If Congress had intended that the words "clothing wool" should have their commercial designation, it would simply have used the words without qualification or would have said "commercially known as". It would not have used the phrase *"commonly known as."*

It was held by the court in that case that—

> * * * Congress, by using the expression "commonly known as clothing wool," indicated expressly its intention not to give to the expression "clothing wool" the commercial designation that it has when used in contrast with combing wool * * *.

and that—

> * * * the plain purpose of Congress requires the interpretation of the words in their ordinary rather than their commercial or trade meaning * * *.

We think that the lead which the ordinary person commonly knows as a refill is one which may be used in a mechanical pencil, not after cutting or manipulation, but as found. This is borne out by the fact, as shown by the record, that refills when offered to the public are always in sizes which will fit mechanical pencils. It is noted that in the "department," "plant," "organization," or "trade" of the defendant's witnesses leads answering the description of the leads at bar

would be called "refills" or "refill leads." This, however, to our minds indicates a difference between the commercial understanding of the term "refills" and the common understanding, and, of course, in the tariff provision in question Congress expressly indicated its intention that the common meaning should prevail.

It is further urged by the defendant in the brief filed in its behalf that the leads at bar have been advanced to a point where their ultimate use as refills has been made clear and their utility in any other possible use has been destroyed, and, citing the doctrine laid down by our appellate court in *Waltham Watch Co.* v. *United States*, 25 C. C. P. A. 330, T. D. 49425, it is argued that they should be classified under the provision for refills. We think that doctrine, which has to do with the question of whether unfinished articles may be properly classified under tariff provisions for the articles which are unqualified, has no application here in view of the express provision for "leads, *commonly known as refills.*" The only leads commonly known as refills are those ready for use in mechanical pencils, and a lead not so ready for use would not be "commonly known as" a refill.

For the foregoing reasons the claim in each of the protests for duty at the rate of 40 per centum ad valorem under paragraph 1549 (b) of the Tariff Act of 1930 is sustained, and judgment will issue accordingly.