(C. D. 896)

J. S. Staedtler, Inc. *v.* United States

United States Customs Court, First Division

(Decided November 23, 1944)

*Strauss & Hedges; Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General *(John J. McDermott,* special attorney), for the defendant.

Before Oliver, Walker, and Cole, Judges; Oliver, P. J., dissenting

Walker, Judge: Two types of merchandise are involved in these protests, which were consolidated for trial. One type consists of pencils which were assessed with duty at the rate of 50 cents per gross and 30 per centum ad valorem under the provision in paragraph 1549 (a) of the Tariff Act of 1930 for "pencils of * * * wood; * * * filled with lead * * *." The claim made in each of the protests with respect to these is for duty at the rate of 50 cents per gross and 25 per centum ad valorem under the provision in the same subparagraph for "pencils stamped with names other than the manufacturers' or the manufacturers' trade name or trade-mark."

When the case was called for trial the plaintiff established that the pencils identified by the following item numbers on the invoices

| No. 933 | soft copying pencils |
| 2886/2H | "Mars-Lumograph" black lead pencils |
| 2886/F | "Mars-Lumograph" black lead pencils |
| 933 | medium copying pencils |
| 3128 | "Mars-Lumograph" display cases |
| 2886/3H | "Mars-Lumograph" drawing pencils |
| 2886/5H | "Mars-Lumograph" drawing pencils |
| 2886/6H | "Mars-Lumograph" drawing pencils |
| 2886/4H | "Mars-Lumograph" black lead pencils |
| 2886/3B | "Mars-Lumograph" black lead pencils |
| 2886/B | "Mars-Lumograph" black lead pencils |
| 2886/HB | "Mars-Lumograph" black lead pencils |

| | |
|---|---|
| 2886/H | "Mars-Lumograph" black lead pencils |
| 6120 | extra black pencils |
| 2886/Ex B | "Mars-Lumograph" black lead pencils |
| 2886/2B | "Mars-Lumograph" black lead pencils |
| 6881 | "Soft Luna" black lead pencils without point protector |
| 2886/F | "Mars-Lumograph" pencils |
| 1018/HB | "Mars-Lumograph" artists' pencils |
| 1018/F | "Mars-Lumograph" artists' pencils |
| 1018/H | "Mars-Lumograph" artists' pencils |
| 1018/2H | "Mars-Lumograph" artists' pencils |
| 1018/3H | "Mars-Lumograph" artists' pencils |
| 1018/4H | "Mars-Lumograph" artists' pencils |
| 1018/5H | "Mars-Lumograph" artists' pencils |
| 1018/6H | "Mars-Lumograph" artists' pencils |
| 2886/Ex Ex B | "Mars-Lumograph" black lead pencils |
| 2886/BB | "Mars-Lumograph" black lead pencils |
| 6120 | black lead pencils |

were, in fact, stamped with names other than the manufacturers' or the manufacturers' trade name or trade-mark, and counsel for the Government agreed that such items were similar in all material respects to the merchandise which was the subject of decision in the case of *United States* v. *Irving P. Favor*, 24 C. C. P. A. 399, T.D. 48854, the record in which case was, by agreement, incorporated as part of the record in the case at bar.

As to the items so identified, judgment will therefore issue sustaining the protest claim.

The other type of merchandise involved consists of leads for mechanical pencils which were assessed with duty at the rate of 34.375 cents per gross under the provision in paragraph 1549 (b) of the Tariff Act of 1930 which reads as follows:

* * * leads, commonly known as refills, black, colored, or indelible, not exceeding six one-hundredths of one inch in diameter and not exceeding two inches in length, 10 cents per gross, and longer leads shall pay in proportion in addition thereto; * * *.

The leads in issue are copy or indelible leads, .0465 inches in diameter, and 6⅞ inches long, and the 34.375 cent rate was apparently arrived at by taking the rate to be 10 cents per gross for each two inches of length of lead and proportioning the rate on the last seven-eighths of an inch of lead.

The protest claim in each case is for duty at the rate of 40 per centum ad valorem under the provision in the same subparagraph for—

* * * colored or crayon leads, copy or indelible leads, not specially provided for * * *.

The question presented is whether the leads involved are "leads, commonly known as refills." This issue was before the court in the case of *J. S. Staedtler* v. *United States*, 8 Cust. Ct. 357, C. D. 640, wherein the claim of the importer was sustained, and the record in

that case was, by consent, incorporated as part of the record in this case.

It was held in the *Staedtler* case, *supra*, that the provision for "leads, commonly known as refills" covers such leads as the ordinary person knows as refills, that is to say, as they are offered to the consuming public. In view of the fact that the leads in issue were in lengths in which they were not offered to the public, being too long in their condition as imported to be used as refills for mechanical pencils, it was held they were not properly classifiable under the provision for "leads, commonly known as refills."

The record in the case at bar, so far as the leads are concerned, in addition to the incorporated case, consists of the testimony of one witness for the plaintiff, and five for the defendant.

Plaintiff's witness, who had also testified in the incorporated case, identified the leads in issue and stated that they were the same as those involved in the *Staedtler* case.

Four of defendant's witnesses were trade experts, and each identified the leads in issue as refill leads, but it is clear that in each case the statement was based upon a trade understanding or practice to consider any lead which would fit a mechanical pencil from the standpoint of diameter to be a refill lead, regardless of whether in its condition as found it would fit a mechanical pencil lengthwise.

Similar testimony was given in the *Staedtler* case. As we pointed out in that case, Congress used the expression "commonly known as" in the provision in controversy, and it is our view here, as there, that that is the key to the determination of the issue.

Mechanical pencils and refill leads for them are articles in everyday use in the United States. A large portion of the population purchases and uses them. There does not appear to be any dispute but that leads of the length of those in issue are not offered to the consuming public, and the record shows that they are cut into standard lengths ranging from 1⅜ inches to 5 inches before being so offered. We think it follows that the ordinary, noncommercial meaning of the term "refill leads" could only include those leads which are in sizes to fit mechanical pencils, for they are the only kind known outside of trade circles.

Thus it would appear that there is a difference between the commercial and common understandings of what are known as refill leads, and Congress saw fit to provide expressly that the common meaning should be adopted.

Certain legislative history of paragraph 1452 of the Tariff Act of 1922, the exact predecessor of paragraph 1549 (b) of the present act, is set forth in the brief filed on behalf of the defendant. It is shown that as passed by the House the provision read—

\* \* \* leads not exceeding six one-hundredths of one inch in diameter and commonly known as refills, 10 cents per gross \* \* \*,

and in that form contained no reference to length; that in the hearings before the Senate Finance Committee it was pointed out by American interests that no provision had been made covering the length of such leads, and it was suggested that the duty be based upon the 1½ inch length "and any leads longer than this should carry an increased duty in proportion" (Hearings before the Committee on Finance on the Proposed Tariff Act of 1921 (H. R. 7456), Vol. 4, pp. 4270-1); that as reported to the Senate by the Committee the provision was expressed in this form:

* * * leads not exceeding six one-hundredths of one inch in diameter and not exceeding six inches in length, and commonly known as refills, 10 cents per gross; * * *

that the Senate rejected the foregoing and substituted the language which is here in controversy, and that the House accepted the language of the Senate.

It is argued that in rejecting the 6-inch limitation of the Senate Finance Committee, the Senate substituted language which would include leads of any length. In our view, the legislative history shown does not clearly and definitely point to that conclusion. Just what impelled the Senate to substitute the language it did is not disclosed, but we do not think that the facts shown can be said to explain what was meant by the term "leads, commonly known as refills," which appeared in the statute as enacted.

It is further argued that in reenacting the provision in the Tariff Act of 1930 in the exact language in which it appeared in the Tariff Act of 1922, Congress adopted the interpretation put on the provision by the Court of Customs and Patent Appeals in the case of *United States* v. *Faber, Inc.*, 16 Ct. Cust. Appls. 467, T. D. 43211. During the course of the opinion in that case the court said:

An examination of the statute, paragraph 1452 [of the Tariff Act of 1922] shows that three general classes of leads are provided for:

(1) Pencil leads not in wood or other material.

(2) Leads, commonly known as refills, black, colored, or indelible, not exceeding six one-hundredths of an inch in diameter, *of any length.*

(3) Colored or crayon leads, copy or indelible leads, not specially provided for. [Italics added.]

The decision in that case was promulgated on January 29, 1929, and the Tariff Act of 1930 was enacted into law on June 17, 1930. It appears to be argued that Congress was aware of the interpretation of paragraph 1452, including the italicized words, and, by reenactment, adopted such judicial interpretation. An examination of the cited case, however, reveals that there was no issue raised as to the length of the leads there involved, and it would appear that the summarization above, insofar as it purported to interpret the statute with respect to the length of the leads covered thereby, was not necessary to a decision in that case. Under the decision of the Court

of Customs and Patent Appeals in the case of *Quong Yuen Shing Co.* v. *United States,* 31 C. C. P. A. 43, C. A. D. 247, the doctrine of legislative ratification of judicial decision does not apply in such cases, and we so hold here.

Defendant's fifth witness was the examiner of merchandise at the port of New York who passed the instant merchandise. He testified that he had occupied that position for about 6 years, and had previously been classifying clerk attached to the office of the examiner who passed the same line of merchandise for approximately 14 years.

His testimony was to the effect that leads such as those in issue had been classified for duty by the collector of customs at the port of New York for the past 17 years as "leads, commonly known as refill leads," following advisory returns as such by himself and his predecessor. We do not regard this evidence as establishing a settled and well-understood administrative practice with regard to the classification of leads such as those in issue which would be controlling on this court. The volume and frequency of such importations was not shown, nor was it shown that the bulk of such importations had been made through the port of New York. Furthermore, we do not regard the question of construction as being so close, or the tariff term involved to be so ambiguous as to warrant the application of the rule of long-continued administrative practice, even if proved.

We are satisfied that the leads in issue are not "leads, commonly known as refill leads," but material from which such leads may be made. As an illustration of the situation, one witness for the defendant testified that his concern manufactured leads of the diameter of those in issue "as long as this room," and that he would call leads of such length "refill leads." While it may be true that leads of such length and those in the case at bar are refill leads in the eyes of the trade, we are convinced that they are not commonly known as such.

The claim in each of the protests for duty at the 40 per centum rate under the provision in paragraph 1549 (b) for "copy or indelible leads, not specially provided for" is therefore sustained as to the following items, which were identified as being those in issue:

| | |
|---|---|
| 821833–G | R/6805 intense red leads |
| | R/2081 red soft leads |
| | R/2081 blue soft leads |
| 827969–G | R/2081 red soft leads |
| | R/2081 blue soft leads |
| 820208–G | 8347 soft purple leads |
| 826980–G | R/2081 red soft leads |
| | R/2081 blue soft leads |

In all other respects and as to all other merchandise save the items of pencils and leads hereinbefore identified, the protests are overruled. Judgment will issue accordingly.

### DISSENTING OPINION

OLIVER, Presiding Judge: I feel constrained to dissent from the decision of my associates herein sustaining the protest on the leads classified as "leads, commonly known as refills," notwithstanding the fact that in so doing I must reverse the position taken by me in *J. S. Staedtler* v. *United States*, 8 Cust. Ct. 357, C. D. 640, from which no appeal was taken. In that case, the record of which is incorporated herein, I joined with Judge Walker in sustaining the protests. The same issue on the same merchandise is here re-presented for our consideration in a record containing additional testimony on behalf of the Government. On the entire record I am of opinion that our position in the *Staedtler* case, *supra*, should be reversed and judgment rendered overruling the protests as to said merchandise.

The leads under consideration measure .0465″ in diameter by 6⅞″ in length. The entire record establishes that this diameter lead is used exclusively as refills for mechanical pencils. It is dedicated to such use exclusively and can be used for no other purpose. The diameter controls in determining what is a refill lead. It is also made clear that refill leads *as used* in mechanical pencils, and as sold to the consumer, are in lengths measuring 1⅜″, 4″, and 5″. The imported leads measure 6⅞″, longer than any mechanical pencil now on the market, but this length (6⅞″) is cut after importation into five 1⅜″ lengths. The entire dispute centers around the wording of paragraph 1549 (b) which provides for:

\* \* \* leads, commonly known as refills, \* \* \* not exceeding two inches in length, 10 cents per gross, and longer leads shall pay in proportion in addition thereto; \* \* \*.

The leads before us are "longer leads" and have been assessed with duty "in proportion in addition thereto." The sole remaining question is whether these "longer leads," too long for use as refills as imported, are "commonly known as refills." I am of opinion that they are. It is my belief that these leads *regardless of length* when of the refill *diameter* are commonly known as refills even though not yet cut to the proper pencil size. I am further convinced that Congress intended the diameter and not the length to be the determining factor as to whether or not leads are dutiable as refills. When the corresponding paragraph in the Tariff Act of 1922 (par. 1452) was under consideration, it appeared at one time as:

\* \* \* leads not exceeding six one-hundredths of one inch in diameter and not exceeding six inches in length, and commonly known as refills \* \* \*.

There is, and so far as appears from the record, there was no pencil capable of taking a 6-inch refill. This limitation in length was subsequently removed and as the provision appeared in the tariff acts

of 1922 and 1930, no limitation in length was made but in its final form the provision in both tariff acts was that:

* * * *longer* leads [than two inches] shall pay in proportion in addition thereto * * * . [Italics supplied.]

Moreover, in *United States* v. *A. W. Faber, Inc.*, 16 Ct. Cust. Appls. 467/469, T. D. 43211, decided in January 1929, our appellate court interpreted this portion of paragraph 1452, Tariff Act of 1922, as meaning: "leads * * * *of any length.*" [Italics supplied.] While the issue of length was not before the court in the *Faber* case, the fact that it so interpreted the paragraph, coupled with the fact that Congress reenacted paragraph 1549(b) in the identical language, amounts, in my opinion, to legislative sanction of judicial interpretation. Congress could readily have limited the length if it did not mean "any length" without restriction. There is nothing ambiguous about the meaning of this paragraph as I see it. Leads of this diameter are dedicated to use as refills in mechanical pencils. They have no other use. They are bought and sold and "commonly known" as such. They are not further manufactured or manipulated after importation. There seems no logical reason why these special diameter leads 6⅞" in length are not, for tariff purposes, refills even though they must be cut into smaller pieces for actual use. There is nothing in the wording of the paragraph which would indicate that by the use of the words "longer leads" Congress meant "longer leads but not longer than five inches."

As to the limitation caused by the phrase "commonly known as," I do not consider the *Stone & Downer* case (274 U. S. 225) as controlling to the contrary. In that case the court said (page 238):

The exact question is whether paragraph 18 includes in the term clothing wool, long staple or combing wool as well as short staple or carding wool. *They are both used in clothing.* [Italics supplied.]

In the present case these leads are not used both for refills and for other purposes. They are dedicated to the sole use as refills.

I am further persuaded that the testimony of the many witnesses testifying for the defendant was not an attempt to establish a trade meaning different from the common meaning but rather to establish the common meaning.

I am of opinion that our holding in the *Staedtler* case (8 Cust. Ct. 357, C. D. 640) should be reversed and the protests herein overruled as to the merchandise classified as "leads, commonly known as refills" under paragraph 1549 (b), Tariff Act of 1930.