## (C. D. 1183)

### NAT E. BERZEN, INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided August 15, 1949)

*James W. Bevans* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Dorothy C. Bennett* and *Sybil Phillips*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; JOHNSON, J., not participating

EKWALL, Judge: The collector of customs at the port of Buffalo, N. Y., assessed duty upon an importation of synthetic scrap rubber, composed chiefly of parts of automobile tires and inner tubes, at 7½ per centum ad valorem, the rate provided for waste, not specially provided for, in paragraph 1555 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1555), as modified by the trade agreement with the United Kingdom, T. D. 49753. The complete text of said paragraph 1555 will be found in the margin.[1] Plaintiff, the importer, brought this action claiming that the merchandise is entitled to free entry under paragraph 1697 of the same act as "scrap or refuse india rubber and gutta-percha fit only for remanufacture." The text of the last-named paragraph will also be found in the margin.[2]

The question for determination is, does the provision in said paragraph 1697 of the free list for "scrap or refuse india rubber  *  *  * fit only for remanufacture" include scrap or refuse synthetic rubber, or is it limited to such material or articles when composed of natural rubber?

At the trial of the case counsel for the plaintiff conceded that the importation consists of synthetic and not natural rubber scrap. In his brief he contends that the word "india" as used in the paragraph in question does not limit the provisions thereof to rubber produced from the sap or latex of trees growing in India; that the terms "india rubber" and "rubber" are synonymous; and that all rubber, irrespective of its geographical origin, is india rubber.

The vice president of the plaintiff company testified at the trial that he has been engaged in buying and selling scrap rubber for 25 years; that his company purchases old automobile tires, inner tubes, peelings (or pieces of rubber cut from tires), and different grades of factory scrap of both natural and synthetic rubber; that it sells such merchandise to companies engaged in the reclaiming of rubber, who buy both natural and synthetic rubber. The reclaiming process is the same for both types. He further testified that pursuant to customs

---

[1] PAR. 1555. Waste, not specially provided for, 7½ per centum ad valorem.

[2] PAR. 1697. India rubber and gutta-percha, crude, including jelutong or pontianak, guayule, gutta balata, and gutta siak, and scrap or refuse india rubber and gutta-percha fit only for remanufacture.

requirements synthetic scrap and natural scrap rubber are shipped separately and the former is labeled synthetic. Because it is not always possible to keep them completely separate, the two are sometimes mixed together. On cross-examination he stated that no synthetic rubber was sold by his company prior to 1930. In domestic transactions scrap rubber composed of both synthetic and natural scrap rubber is called simply mixed scrap rubber, but on invoices of scrap from Canada, the merchandise is labeled synthetic rubber scrap.

The customs laboratory chemist testified on behalf of the Government. He stated that he had been engaged as a Government chemist for 22 years during most of which period he had been in charge of the rubber-testing sections of the laboratory, and that he tests both natural and synthetic rubber. His report on the instant merchandise (exhibit 2) states:

> The exhibit is composed of tire carcass pieces and solid rubber trimmings. The rubber in the tire parts consists of a blend of natural rubber and a synthetic rubber of the Butadiene-styrene type (GR–S).

He explained that the initials GR–S represent a designation for synthetic rubber used by the Government during the war and mean Government rubber type S, which is butadiene-styrene; that type GR–S synthetic rubber is made from butadiene, obtained from either alcohol or petroleum, and styrene which is obtained from benzene and ethylene; whereas natural rubber, the latex from certain trees and shrubs, is made up of units of isoprene, linked together in long chains; that chemically the two products are very different and only resemble each other in certain physical properties. This witness stated that natural india or gutta-percha rubber had never been synthesized in the sense of identical reproduction by artificial means; that butadiene-styrene, the GR–S product, belongs to a broad class of materials called elastomers.

While the court is of opinion that paragraph 1697, *supra*, in its use of the term "india" in connection with "rubber" does not limit that term to rubber produced from the sap or latex of trees growing in India, and that natural rubber irrespective of its geographical origin would be included within the paragraph, the real question at issue is whether the term "india rubber" contemplates natural rubber solely, or is broad enough to include synthetic rubber.

We must look to the legislative history of the paragraph to ascertain the intent of Congress in making use of the term "india rubber." As far back as 1832 that term has appeared in various tariff acts. In the Summary of Tariff Information, 1929, which was before Congress when it was considering the bill which became the Tariff Act of 1930, we find the following description of india rubber (p. 2387):

> India rubber is a hydrocarbon gum obtained by coagulating the milk, or latex, found in the bark of certain trees, shrubs, and vines. The milk or latex is a white or cream colored, more or less viscous, liquid obtained by "tapping" the trees.

Plaintiff's counsel in the brief filed cites cases which he claims support his contention that the term "india" as used in various tariff acts in connection with rubber refers to various types and grades of crude rubber. An examination of those cases reveals that they are distinguishable from the instant case, for the most part because the evidence showed a commercial designation which included the merchandise there under consideration. The evidence before us is lacking in proof of commercial designation for the instant merchandise.

It is plain that Congress did not consider that the tariff as written covered this synthetic rubber scrap, for in Public Law No. 415 (T. D. 51859), paragraph 1697, *supra*, was amended to accomplish that very purpose. That law reads:

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That paragraph 1697 of the Tariff Act of 1930 (relating to the free importation of rubber and rubber scrap) is amended by striking out "scrap or refuse india rubber" and inserting in lieu thereof "scrap or refuse synthetic or india rubber."

When the bill (H. R. 2029), which was enacted as Public Law No. 415, was before the Senate for passage, Senator Millikin made the following statements:

Mr. President, the purpose of the amendment is to put synthetic-rubber scrap on the same basis of preference with india-rubber scrap.

⁣ *   *   *   *   *   *   *

Mr. President, at the present time, under a miscellaneous classification under the Tariff Act of 1930, the synthetic-rubber scrap would carry a 7½ percent ad valorem duty as waste not specifically provided for. This measure takes the synthetic scrap out of that miscellaneous category and puts it under the same category with india-rubber scrap or refuse. (Cong. Rec., 80th Cong., 2d Sess., Vol. 94, Part 1, p. 854/5.)

Where a subsequently enacted statute includes certain language which did not appear in an earlier act, it is a legislative admission that the language of the earlier statute was not broad enough to include the matter thus added. *United States* v. *Wells, Fargo & Co.*, 1 Ct.. Cust. Appls. 158, T. D. 31211.

We are convinced that the law as it existed prior to the amendment in 1948 did not provide for free entry of synthetic rubber scrap. The merchandise before us, admittedly synthetic rubber scrap, does not fall within the category of goods entitled to free entry under paragraph 1697, *supra*. The action of the collector in assessing duty thereon as waste, not specially provided for, at the rate of 7½ per centum ad valorem under paragraph 1555 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, *supra*, was in conformity with the law. Plaintiff's claim is therefore overruled.

Judgment will be rendered accordingly.