(C. D. 1752)

A. F. BURSTROM *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 12, 1956)

*John C. Ray* (*Arthur R. Martoccia* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh* and *Richard M. Kozinn*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on certain slabs of steel, imported from Canada during 1949, at 10 per centum ad valorem under paragraph 304 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as steel slabs, valued above 2½ and not above 5 cents per pound. It is claimed that the merchandise is dutiable only upon the cost of alterations performed in Canada, pursuant to paragraph 1615 (g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. A claim that the merchandise was entitled to free entry under paragraph 1615 (a), as. amended, *supra*, as American goods returned, not advanced in value or improved in condition, was abandoned at the trial.

The pertinent provisions of the tariff act are as follows:

[PAR. 304, as modified by the General Agreement on Tariffs and Trade, T. D. 51802].

Steel ingots, cogged ingots, blooms and slabs, by whatever process made:

     \*      \*      \*      \*      \*      \*      \*

     Valued above 2½ and not above 5 cents per pound_____10% ad val.

PAR. 1615 [as amended by the Customs Administrative Act of 1938].

     \*      \*      \*      \*      \*      \*      \*

(g) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph.

It is not disputed that the involved steel slabs were produced from steel ingots made in the United States and sent to Canada for processing into slabs. Plaintiff's contention is that such processing was an alteration, within the purview of paragraph 1615 (g), *supra*, and that duty should have been assessed only upon the value of the alterations. It was agreed at the trial that the pertinent regulations as to the identity of the merchandise had been complied with and that the amounts set forth on the invoices constituted the values of the "alterations."

In support of his contention, plaintiff called Eric M. P. Caunce, chief chemist and metallurgist at the Ford Motor Co. of Canada, Ltd., who testified as follows: Due to the short supply of steel at the time, certain ingots were brought to Canada for slabbing. Ingots are specially designed steel castings and are made by pouring the metal received from the furnace into cast-iron molds. Those involved herein measured 22 x 48 x 56 inches and weighed approximately 6 tons. From these ingots, slabs were produced by the Steel Co. of Canada at Hamilton, Ontario. The ingots were placed in a soaking pit, a large rectangular furnace with a temperature of 2,300 to 2,350 degrees Fahrenheit, for 6 to 8 hours. Then, they were taken to the blooming or slabbing mill, where they were passed backwards and forwards under the rollers several times, then reversed and edged, and passed under the rollers again. The resulting articles were 4 to 4¼ inches thick, 44 inches wide, and 30 feet long. They were cut into lengths of about 10 feet, and the butt and crop ends cut off, these portions being useless because of various amounts of "segregation and impurities."

The ingots herein were known and accepted as S. A. E. 1010 rimmed steel, meaning that they met certain chemical specifications of the Society of Automotive Engineers. Such ingots have an outside layer or skin, which is carbon free for about one-half to three-fourths of an inch. Below that are approximately 4 inches of blowholes, and beyond that is the core which is fairly uniform. The grain size

of the ingot is large, interspersed with areas known as pearlite, a constituent of iron or ferrite and iron carbide.

The chemical composition of the steel, described as S. A. E. 1010, does not change in the course of the slabbing operation and remains the same through the various workings to the finished product. The slab differs from the ingot first of all in shape. It has a smaller grain size, due to this change, and the depth of the rim is reduced, although the total content of the rimmed area is approximately the same.

The witness said that the ingot is a raw material; that the slab could hardly be called that, but he would not call it a manufacture either.. In his opinion, both the ingot and the slab are castings, and the material does not cease to be a casting until the production of an article usable for some specific purpose, which occurs about five operations after the slabbing process. He said that there are no characteristics which are present in the ingot and the slab that are not existent in the product resulting from the five additional operations, except the form and a greater ductility.

On cross-examination, the following definition of the word "ingot" from Webster's Dictionary was read to the witness:

A mass of metal cast into some convenient shape for storage or transportation, to be later remelted for casting or finished by rolling, forging, etc.

The witness agreed with the definition, except as to the "remelting." The following definition of the term "slab" was then read:

A rectangular bar of iron or steel made by rolling an ingot so that the width of the section is at least twice the thickness.

The witness was in accord, except that he questioned whether an *iron* ingot could be rolled into a slab.

In the opinion of the witness, a slab is essentially the same as an ingot, but in different form. He stated also: After the ingot has been rolled, it is a semiprocessed ingot, but it is not in the form of an ingot and is known as a slab. It has a new name and is bought and sold as a different commodity. A nonmetallurgist could not tell by looking at a slab that it had ever been an ingot. Two and a fraction, or three, slabs, are produced from an ingot, but the slabs require further processing for use. They are rolled into sheets, coils, and bands, from which the ultimate articles are made. These items— ingots, slabs, sheets, coils, and bands—have commercial value, and each is distinctly known commercially as a different product.

Plaintiff's view is that the merchandise herein remained raw material and was merely changed into the form of slabs. It is contended that so long as crude material is being manipulated or processed into its intended product, such processes are mere alterations, within the purview of paragraph 1615 (g), *supra*, on the ground that the crude

article retains its identity as material, and, though its form is changed, its chemical and metallurgical characteristics remain the same.

As to the meaning of the term "alterations," the Customs Regulations of 1943, section 10.8, provide:

(a)   For the purposes of paragraph 1615 (g), Tariff Act of 1930, as amended, the term "repairs or alterations" shall be held to mean any restoration, change, addition, renovation, cleaning, or other treatment *which does not destroy the identity of the article exported or create a new or different article.* [Italics supplied.]

This definition is in accord with the common meaning of the word "alterations." *G. L. Ramsey a/c The Juvenile Mfg. Co., Inc.* v. *United States,* 26 Cust. Ct. 603, Reap. Dec. 7978. In that case, it was held that the ornamentation of dress fronts in Mexico constituted alterations within the meaning of the statute, the court noting that dress fronts were exported and dress fronts were imported. Changes and additions to an article constitute alterations, within the meaning of paragraph 1615 (g), so long as the articles have not been converted into something else. *C. S. Emery & Co.* v. *United States,* 71 Treas. Dec. 880, T. D. 49000; *Gilbert W. Greene* v. *United States,* 13 Cust. Ct. 273, Abstract 49676; *Wilbur G. Hallauer* v. *United States,* 40 C. C. P. A. (Customs) 197, C. A. D. 518.

The case of *United States* v. *The J. D. Richardson Company,* 36 C. C. P. A. (Customs) 15, C. A. D. 390, involved the exportation of so-called "flat bands" or "rims" to Canada for the purpose of having the rims "flanged." The court pointed out that the articles, as exported, were not finished machine parts, but that the articles, as imported, were so classifiable, and held that the work done in Canada did not constitute alterations, within the meaning of paragraph 1615 (g). It stated (p. 17):

* * * Broadly, it may be said, as seems to have been held by the trial court, that the term "alterations" of articles means any manufacturing process to which articles may be subjected. We are of opinion, however, that the Congress did not intend by the term "alterations" in paragraph 1615 (g), *supra,* to mean that uncompleted articles, such as those here involved, manufactured in the United States or imported into the United States, could be exported to a foreign country and there manufactured into completed articles such as those in the case at bar, and when returned to the United States, be subject only to duties on the so-called "alterations" provided for in paragraph 1615 (g), *supra.*

Plaintiff's argument is that the merchandise herein has not lost its identity from that exported, since it is the same material but in a different form. Steel of certain specifications was exported, and steel of the same specifications was imported, but it was in a different form. The importance of the change in form is demonstrated by the testimony that an ingot and a slab are distinct articles of commerce; that slabs are bought and sold as such; that a nonmetallurgist could not tell that the slab had been produced from an ingot. The signifi-

cance of the form is brought out also by the fact that the tariff act provides *eo nomine* for steel in various forms, such as ingots, cogged ingots, blooms, slabs, die blocks, billets, bars, sheets, and plates. It is evident that Congress regarded the form and not solely the material as determinative of the classification. An examination of the metal schedule of the tariff act shows that Congress was very precise in describing the forms of steel and other metals and, where it was intended that a particular form be included, *eo nomine* provision was made therefor. See *Burgess Battery Co.* v. *United States*, 19 Cust. Ct. 28, C. D. 1063; *Lunham & Reeve, Inc.* v. *United States*, 3 Cust. Ct. 293, C. D. 258, affirmed in 28 C. C. P. A. (Customs) 268, C. A. D. 153, *C. J. Tower & Sons* v. *United States*, 33 Cust. Ct. 223, C. D. 1657. Consequently, we are of opinion that Congress did not intend that a change from one form to another should be regarded as an "alteration," within the meaning of paragraph 1615 (g), *supra*. Although ingots and slabs are both dutiable under paragraph 304, ingots could not be classified as slabs nor slabs as ingots. Both are distinct articles, and one is not an alteration of the other.

This view is further supported by the fact that, in the Customs Simplification Act of 1954 (68 Stat. 1136), Congress recently amended paragraph 1615 (g) to add:

(2) If—

(A) any article of metal (except precious metal) manufactured in the United States or subjected to a process of manufacture in the United States is exported for further processing; and

(B) the exported article as processed outside the United States, or the article which results from the processing outside the United States, as the case may be, is returned to the United States for further processing,

then such article may be returned upon the payment of a duty upon the value of such processing outside the United States at the rate or rates which would apply to such article itself if it were not within the purview of this subparagraph(g).

This section was added to permit manufacturers of metal articles processed in the United States to export them for further processing abroad, without payment of duty on reimportation, except on the cost of the processing. Senate Report No. 2326 (1954 Congressional and Administrative News 3900, 3903, 3904). It is in effect a legislative admission that the language of paragraph 1615 (g), as it appeared previously, was not broad enough to include articles of metal, exported from the United States for processing and reimported for further processing. *United States* v. *Wells, Fargo & Co.*, 1 Ct. Cust. Appls. 158, T. D. 31211; *Nat E. Berzen, Inc.* v. *United States*, 23 Cust. Ct. 24, C. D. 1183; *United States* v. *R. J. Saunders & Co., Inc.*, 42 C. C. P. A. (Customs) 128, C. A. D. 584.

For the reasons stated, we hold that the exported ingots were not subjected to mere "alterations," within the purview of paragraph 1615 (g), *supra*, and the slabs imported were properly assessed with

51

duty on their entire value under paragraph 304 of the Tariff Act of 1930, as modified, *supra*.

The protest is overruled and judgment will be rendered for the defendant.