(C.D. 2208)

C. J. TOWER & SONS OF NIAGARA, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 5, 1960)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The merchandise in this case is described as cotton drills and was exported to Canada for processing and returned to the United States on March 21, 1957. It was assessed with duty at its full value at 10 per centum ad valorem under paragraph 907 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, as filled or coated cotton cloth. It is claimed that the processing done in Canada was an alteration and that the merchandise is dutiable only upon the value of said alteration, in accordance with paragraph 1615(g) (1) and (4) of said tariff act, as amended by the Customs Simplification Act of 1954.

The pertinent provisions of the tariff act, as modified and amended, are as follows:

PAR. 907 [as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739]. Filled or coated cotton cloths not specially provided for, 10 percent ad valorem.

PAR. 1615 [as amended by the Customs Simplification Act of 1954] :

(g) (1) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph (g).

\*    \*    \*    \*    \*    \*    \*

(4) For the purposes of this subparagraph (g), the value of repairs, alterations, or processing outside the United States shall be considered to be—

(A) the cost to the importer of such repairs, alterations, or processing; \* \* \*.

It was stipulated at the trial that the cost of the processing in Canada was $450.29, Canadian currency, and that the pertinent customs regulations had been complied with.

Edward Warren Bratton, manager of manufacturing services in the coated abrasive division of Carborundum Co., the importer of the merchandise, testified as follows: He has been responsible for the design of coated abrasives or sandpaper since his employment in 1936. Such merchandise consists of backing materials of paper, cloth, vulcanized fiber, or combinations of paper and cloth, to which abrasive materials are applied with suitable adhesives. It is sold commercially in various forms, such as sheets, discs, belts, and molded shapes, and is used in machines for abrading, cutting, smoothing, and polishing.

The witness stated that the cloth involved herein consists of cotton drills, having 76 threads in one direction and 48 in another, designed especially for the purpose intended, that of making good abrasives. The term "drill" identifies the construction or weave of one under and two over, forming a characteristic twill pattern. The material is porous in nature, its surface characteristics are somewhat irregular, and it is susceptible to excessive extensibility, in that as it comes from the loom it is subject to stretch. As a result, it is necessary to laminate the stretch from the cloth, which is done by soaking it in hot water and pulling it in a lengthwise direction. During this operation, the cloth is sometimes dyed, as an identification of the product. In order to reduce the porosity so that the material will retain the subsequent adhesive coatings and in order to provide a smooth coating surface, the cloth is subjected to a sizing, filling, or finishing operation. This is done by drawing the material through a solution of animal fluid adhesive, which is absorbed in the body of the cloth. According to the witness, neither the dyeing nor the sizing caused any chemical change.

The witness testified that the three operations of stretching, dyeing, and sizing were performed on the instant merchandise in Canada. The drills, as exported, were 32 inches wide and were in the form of

jumbo rolls containing about 1,000 yards. The merchandise as imported was 27 inches wide and was in substantially the same length or slightly greater because of the stretch which was imparted to it. The exported merchandise is known as greige or grey goods, a term used in the textile trade to describe fabrics as they come from the loom. The imported merchandise is known as finished cloth backing.

As imported, the merchandise is ready to be coated or the abrasive applied to it in order to make it into a coated abrasive. This is done by applying one layer of adhesive, known as the "making coat," into which is subsequently imbedded the abrasive. After drying, another layer of adhesive known as the "sizing coat" is applied on top of the abrasive. The product is again dried, and, if resinous adhesives have been used, an additional curing step is required.

Samples of merchandise representative of the material in its various stages of manufacture were received in evidence as plaintiff's illustrative exhibits 2, 3, and 4. The first represents the cotton drills in their condition as exported to Canada. It consists of a fairly coarse, moderately heavy cotton cloth, flexible, but slightly stiffer than ordinary cloth. Plaintiff's illustrative exhibit 3 is a sample of the merchandise in its imported condition after processing in Canada. It is a coarse brown material, of the stiffness of light cardboard, and rough to the touch. The last exhibit is the finished product, consisting of material like plaintiff's illustrative exhibit 3, to which abrasive substances have been added.

The witness testified that, in the process of boiling the cloth, a portion of the original mill size or stiffness is removed, and that it is restored by the addition of the filling material. He stated further that the operations performed in Canada resulted in a change of color, in width, to some extent in length, in porosity, in the distribution of the threads in the weave, in weight, in tensile strength, in texture, and in suppleness. The witness explained that the effect of the stretching was to bring the warp threads closer together, resulting in a different number of threads per inch. The witness also stated that after the application of the filling material, which, in itself, is in the nature of an adhesive, the fabric is stronger than in its original condition.

Plaintiff claims that the processing of this material in Canada constituted an alteration thereof and not the production of a new article and that, therefore, duty should be assessed only upon the value of the alterations, in accordance with paragraph 1615 (g), *supra*.

Section 10.8 of the Customs Regulations, issued under this paragraph, provides:

10.8 Articles exported for repairs, alterations, or processing.—(a) For the purposes of paragraph 1615 (g) (1), Tariff Act of 1930, as amended, the term "repairs or alterations" shall be held to mean restoration, change, addition,

renovation, cleaning, or other treatment which does not destroy the identity of the article exported or create a new or different article.

This definition has been held to be in accord with the common meaning of the term "alterations." *G. L. Ramsey a/c The Juvenile Mfg. Co., Inc.* v. *United States*, 26 Cust. Ct. 603, Reap. Dec. 7978; *A. F. Burstrom* v. *United States*, 36 Cust. Ct. 46, C.D. 1752, affirmed in 44 C.C.P.A. (Customs) 27, C.A.D. 631. In the case last cited, the court said (p. 49) :

* * * Changes and additions to an article constitute alterations, within the meaning of paragraph 1615(g), so long as the articles have not been converted into something else.

In *C. S. Emery & Co.* v. *United States*, 71 Treas. Dec. 880, T.D. 49000, it was held that steel machine parts, known as chuck bushings, imported from Canada to be chromium plated here, were entitled to free entry under section 308, Tariff Act of 1930, as machinery or other articles to be altered or repaired, and, in *Amity Fabrics, Inc.* v. *United States*, 43 Cust. Ct. 64, C.D. 2104, it was held that redyeing cloth to render it marketable constituted an alteration.

On the other hand, in *United States* v. *The J. D. Richardson Company*, 36 C.C.P.A. (Customs) 15, C.A.D. 390, it was held that paragraph 1615(g) was not applicable where so-called "flat bands" or "rims" were exported to Canada for the purpose of having the rims "flanged," in accordance with the specifications and requirements of the Ordnance Department of the United States Army, to fit them for use exclusively as finished parts of an assembly of idler wheels for use on the T–26 tank. In the course of its opinion, the court said (pp. 17–18) :

* * * We are of opinion, however, that the Congress did not intend by the term "alterations" in paragraph 1615(g), *supra*, to mean that uncompleted articles, such as those here involved, manufactured in the United States or imported into the United States, could be exported to a foreign country and there manufactured into completed articles such as those in the case at bar, and when returned to the United States, be subject only to duties on the so-called "alterations" provided for in paragraph 1615(g), *supra*. It is clear from paragraph 1615(g), however, that Congress intended to broaden the scope of paragraph 1615 of the Tariff Act of 1930 and to permit articles to be exported not only for the purpose of repairs but for alterations thereof, and to be returned to the United States upon the payment of a duty upon the value of the alterations, or repairs, at which the articles would be subject if imported in their altered or repaired condition. We are of opinion, however, that it was not intended by the word "alterations," contained in paragraph 1615(g), *supra*, to permit articles, such as in the instant case, to be exported in an unfinished condition which could not have been classified as parts of machines, and so manufactured abroad that upon their return would be properly dutiable as parts of machines. Had the "unflanged" articles, exported to Canada, been imported into the United States in an "unflanged" condition, in view of the record in this case, they certainly could not have been classified as parts of machines under paragraph 372, *supra*.

In *A. F. Burstrom* v. *United States*, *supra*, it was held that where steel ingots were exported to Canada and reimported after being converted into steel slabs, duty was properly assessed upon the full value of the imported merchandise. The steel ingots, measuring 22 by 48 by 56 inches, had been converted into steel slabs, 4 to 4¼ inches thick, 44 inches wide, and 30 feet long, and then cut into lengths of about 10 feet. The chemical composition of the steel had not changed in the course of the slabbing operations, and it appeared that the slabs required further processing for ultimate use. The court held that the steel slabs were not the same articles as ingots, differing in name, value, appearance, size, shape, and use, and pointed out that they were separately specified in paragraph 304 of the Tariff Act of 1930, as modified. The processing of the ingots into slabs was, therefore, held not to be an alteration within the purview of paragraph 1615 (g), *supra*.

In the instant case, the merchandise was changed by the processing in Canada in color, width, length, porosity, in the distribution of the threads in the weave, in weight, tensile strength, texture, and suppleness. While the merchandise has been referred to as cotton drills in both its exported and its imported condition, that term merely identifies the type of weave. The exported merchandise is known in the trade as greige or grey goods, while the imported merchandise is finished cloth backing and is ready to be coated or the abrasive applied, in order to produce a coated abrasive. Although Mr. Bratton testified that the cloth was designed specially for the purpose intended, it is evident from an examination of the samples that the grey goods could have been used in various ways, whereas the finished cloth backing has a much more limited use and is peculiarly adapted for use in the manufacture of coated abrasives.

The imported merchandise was assessed with duty under paragraph 907 of the Tariff Act of 1930, as modified, under the specific provision for filled or coated cotton cloth. The grey goods do not fall within this classification, but would have been dutiable under one of the provisions for cotton cloth in paragraph 904 of the Tariff Act of 1930, as modified.

The samples themselves are convincing evidence that the returned merchandise is a new or different article, having materially different characteristics and a more limited and specialized use.

We hold, therefore, that the processing in Canada constituted more than an alteration, within the meaning of paragraph 1615 (g) (1) and (4), *supra*, and that the merchandise was properly assessed with duty at its full value at 10 per centum ad valorem under paragraph 907 of the Tariff Act of 1930, as modified, as filled or coated cotton cloth.

The protest is overruled and judgment will be rendered for the defendant.