(C.D. 3070)

LeGRAN MANUFACTURING COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 31, 1967)

*Milton M. Bloom* for the plaintiff.

*Carl Eardley*, Acting Assistant Attorney General (*Charles P. Deem*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

LANDIS, Judge: The controversy in the three consolidated protests here before us concerns the classification under the Tariff Act of 1930, as amended, of unfinished women's cotton or rayon dresses and housecoats, woven or knitted, which were imported from Jamaica in 89 different entries.

Plaintiff, LeGran Manufacturing Company, was in the dressmaking business in Cincinnati, Ohio, and exported cut-out portions of ladies' garments, together with thread, zippers, etc., to Jamaica where the basic sewing was done whereupon the sewn garments were returned to plaintiff in the United States.

Simply stated, the importer's contention is that these dresses and garments constituted American goods returned, asserting that the goods which were unfinished garments had previously been exported from the United States solely for alterations, and that the articles should, therefore, have been assessed with duty only on the value of the alleged alterations pursuant to the provisions of paragraph 1615(g)(1) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954.

The collector classified the articles under various provisions of the Tariff Act of 1930 or Tariff Schedules of the United States (effective August 31, 1963), at various rates, depending on the date of entry, namely, paragraph 917, as modified, for knit cotton ware, dutiable at 25 per centum ad valorem; paragraph 919, as modified, for cotton wearing apparel, dutiable at 20 per centum ad valorem; paragraph 1311, as modified, for rayon wearing apparel, dutiable at 25 cents per pound and 27½ per centum ad valorem; paragraph 1529(a), as modified, for wearing apparel in part trimmed, dutiable at 42½ per centum ad valorem; TSUS item 382.06 for knit women's, girls', or infants'

wearing apparel, not ornamented, dutiable at 25 per centum ad valorem; and TSUS item 382.33, for unknit wearing apparel, other than coats, dressing gowns, pajamas and vests, dutiable at 20 per centum ad valorem.

The above rates were assessed at full appraised values, on the basis that the importations consisted of new articles of merchandise rather than articles merely repaired or altered abroad.

The statute relied upon by plaintiff governing American goods returned previously exported for repairs or alterations is paragraph 1615(g), Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, Public Law 768, 68 Stat. 1136, viz:

(g) (1) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph (g).

\* \* \* \* \* \* \*

(4) For the purposes of this subparagraph (g), the value of repairs, alterations, or processing outside the United States shall be considered to be—

(A) the cost to the importer of such repairs, alterations, or processing; or

(B) if no charge is made, the value of such repairs, alterations, or processing, \* \* \*

While defendant's brief raises a subsidiary issue concerning the importer's failure to comply with mandatory customs regulations (19 CFR section 10.8) published by the Secretary of the Treasury under the authority of paragraph 1615(h), we need reach that question only if we find that the imported articles were in fact no more than repaired or altered after being exported from the United States, as plaintiff alleges.

The record consists of the official papers and the testimony of a single witness for the plaintiff, Mr. Melville Granby, president and sole stockholder of the plaintiff firm.

In substance Mr. Granby testified LeGran Manufacturing Company was in the dressmaking business in Cincinnati, Ohio, and purchased material from various concerns in the United States, each of which supplied plaintiff with a sample of a garment. Plaintiff obtained patterns for the garment and cut out the individual component parts of such garment from the piece goods that were furnished. The various pieces for each dozen or so garments, together with thread, labels, and zippers, were then placed in a bundle and shipped to plaintiff's affiliate, the Betty-Jean Mfg. Co. in Kingston, Jamaica, where the bundles were opened, the various materials were assembled, and the

basic sewing was done on the garments. Mr. Granby testified concerning the sewing operation stating: the sleeves were put on the waist, the waist was put on the skirt, and the skirt was put together. The garments were then rebundled "in the same bundle with the same tag, and returned" to plaintiff's plant in Ohio where the bundles were unpacked and the articles were made into finished dresses. Mr. Granby further testified in substance that the article exported to Jamaica was, in his opinion, an unfinished dress and was likewise an unfinished dress when reimported into the United States.

Plaintiff contends that the operation performed in Jamaica constituted "alterations" as that term is used in paragraph 1615 (g) (1) of the Tariff Act of 1930, as amended, and cites Title 19 CFR, section 10.8, which states:

(a) For the purposes of paragraph 1615 (g) (1), Tariff Act of 1930, as amended, the term "repairs or alterations" shall be held to mean restoration, change, addition, renovation, cleaning, or other treatment which does not destroy the identity of the article exported or create a new or different article.

The Tariff Act of 1930 as originally enacted contained no provision in paragraph 1615 with respect to articles sent abroad for "alterations." It did however provide for articles sent abroad for "repairs." The Customs Administrative Act of 1938 amended paragraph 1615 to include the word "alterations."

The first case involving the amended statute and its applicability to an importation was *Gilbert W. Green* v. *United States*, 13 Cust. Ct. 273, Abstract 49676, decided August 16, 1944. It was there held that certain additions made to a woman's ring previously exported to Mexico were not such as to create a new or different article. A ring was exported and an altered ring was imported.

Other operations held by the court to constitute alterations have been the wiping, polishing, grading, culling, and packing of American apples sent to Canada in *United States* v. *Wilbur G. Hallauer*, 24 Cust. Ct. 568, Reap. Dec. 7804; ornamentation by embroidery or other fancy work of dress fronts sent to Mexico in *G. L. Ramsey a/c The Juvenile Mfg. Co., Inc.* v. *United States*, 26 Cust. Ct. 603, Reap. Dec. 7978; plating of certain nuts and bibb caps in Japan in *John L. Westland & Son, Inc.* v. *United States*, 42 Cust. Ct. 296, Abstract 62803; and the redyeing of cotton velveteen in Italy in *Amity Fabrics, Inc.* v. *United States*, 43 Cust. Ct. 64, C.D. 2104. These cases all turned on factual showings that the articles exported had not been changed into something else by operations performed on them abroad.

A recent case involving alleged alterations was *C. J. Tower & Sons of Niagara, Inc.* v. *United States*, 45 Cust. Ct. 111, C.D. 2208, wherein it was held that the stretching, dyeing, and sizing of cotton fabric

constituted more than an alteration within the purview of paragraph 1615(g)(1), a new product having been created by the processing in Canada, which differed from that exported in color, width, length, porosity, distribution of the threads in the weave, weight, tensile strength, texture, and suppleness. Cited in the opinion were the cases of *United States* v. *The J. D. Richardson Company*, 36 CCPA 15, C.A.D. 390, wherein it was held that the flanging of rims designed for use as idler wheels for T-26 tanks was beyond the purview of alterations, and *A. F. Burstrom* v. *United States*, 44 CCPA 27, C.A.D. 631, wherein it was held that the conversion of steel ingots into steel slabs was more than an alteration of the ingots, the imported steel slabs differing in name, value, appearance, size, shape, and use from the exported ingots.

In the light of the foregoing decisions, the determinative question to be answered in the case at bar is whether the processing abroad of the cut-up garment materials, thread, zippers, and labels was of such a character as to create a new and different article from that exported from the United States.

We are compelled to conclude that it was.

It is true that Mr. Granby testified for the plaintiff that the exported pieces of garment material placed with thread, labels, and zippers in a bundle were, in his opinion, "unfinished dresses" and that the same, after sewing in Jamaica, were likewise "unfinished dresses" when reimported into the United States. However, the term "unfinished dresses" is so broad in its scope that its value as a criterion in any case would appear to be minimal. Here the physical nature of the exported articles was manifestly different from that of the importations that we must conclude any similarity in appellation, broadly speaking, is meaningless. See *United States* v. *International Paint Co., Inc.*, 35 CCPA 87, C.A.D. 376 (change of character between imported and exported article noted although both denominated as "paint.") ; *Fenton* v. *United States*, 1 Ct. Cust. Appls. 529, T.D. 31546.

When the domestic raw product, viz, pattern pieces, labels, thread, and zippers were exported to Jamaica and there combined and manipulated into dresses, though unfinished, no one or all of those raw materials was "altered." Rather, a manufacture was created—a manufacture of Jamaica, differing so obviously in all significant respects from the raw materials as to constitute clearly a new article. The operations performed in Jamaica in producing the imported dresses from the exported raw materials went well beyond any reasonable interpretation of what constitutes "alterations." Patently, the raw materials lost their identity as such and were merged into a new article which,

when imported, could not reasonably be considered to be merely the raw materials, altered.

As held in *United States* v. *The J. D. Richardson Company, supra,* a meaning of "alterations" so broad as to cover any manufacturing process to which articles may be subjected was not intended by the Congress.

The protests are overruled and judgment will be rendered accordingly.