**DOLLIFF & COMPANY, INC.,**
Appellant,

v.

**The UNITED STATES, Appellee.**

**Appeal No. 78–15.**

United States Court of Customs
and Patent Appeals.

May 31, 1979.

William E. Melahn, Doherty & Melahn, Boston, Mass., attorneys of record, for appellant.

* The Honorable Bernard Newman, United States Customs Court, sitting by designation.

1. Item 338.30 provides as follows:

SCHEDULE 3.—TEXTILE FIBERS AND TEXTILE PRODUCTS

PART 3. WOVEN FABRICS

\*    \*    \*    \*    \*    \*    \*

Subpart E. Woven Fabrics, of Manmade Fibers

\*    \*    \*    \*    \*    \*    \*

338.30    Other    [Applicable Rate]

2. Item 806.20 provides as follows:

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Acting Director, Joseph I. Liebman, Jerry P. Wiskin, New York City, for the United States.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and NEWMAN,* Judge.

BALDWIN, Judge.

This is an appeal from the judgment of the United States Customs Court, 81 Cust.Ct. 1, C.D. 4755, 455 F.Supp. 618 (1978), holding certain dacron polyester fabrics to be properly classified under item 338.30 [1] of the Tariff Schedules of the United States (TSUS) and not under item 806.20 TSUS.[2] We affirm.

## Background

This appeal involves certain dacron polyester fabrics which were manufactured in the United States, exported to Canada as greige goods for further processing, and then imported back into the United States. Upon the United States importation, a duty on the fabric was assessed under TSUS item 338.30 as "Woven fabrics, of manmade fibers  *  *  *  Other." Appellant, in an appeal of this classification to the Customs Court, contended that the processing in Canada constituted an alteration within the scope of TSUS item 806.20. Under this proposed classification, a duty is imposed only on the value of the alterations performed in Canada.

SCHEDULE 8.—SPECIAL CLASSIFICATION PROVISIONS

PART 1. ARTICLES EXPORTED AND RETURNED

\*    \*    \*    \*    \*    \*    \*

Subpart B. Articles Advanced or Improved Abroad

\*    \*    \*    \*    \*    \*    \*

Articles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means:

806.20    Articles exported for repairs or alterations    A duty upon the value of the repairs or alterations.

*Customs Court*

In its opinion, the Customs Court summarized the Canadian processing steps as follows: [3]

The essential facts concerning the processing operation in Canada are not in dispute. The domestic loom product is exported as *greige goods* in rolls of approximately 800 to 1,000 yards in length and approximately 118 to 119½ inches in width. It is returned as *finished fabric* suitable for manufacture into curtains, folded over double, widthwise, and cut in lengths of approximately 60 to 80 yards. In Canada the greige goods are subjected to a number of operations, consisting of heat-setting, chemical-scouring, dyeing and heat-setting a second time during which finishing chemicals consisting of melamine resin for anti-creasing characteristics, an antistatic chemical, and a softener chemical are applied to the fabric in this final stage. The initial heat-setting treatment serves to stabilize the fabric through the elimination of shrinkage. Scouring removes sizing and impurities from the fabric. And the second heat-setting treatment induces a permanent adherence of the finishing chemicals to the fabric during the drying stage of the processing. The finished fabric is then inspected, folded and shipped back to the United States. [Footnotes omitted. 81 Cust.Ct. at 455 F.Supp. at 619.]

Upon considering the testimony and exhibits proffered during the trial, the court concluded that the greige goods and finished fabrics differed in name; that the finished fabrics were softer and more full than the greige goods; that the finished fabrics were sold for $1.50 to $1.60 per yard more than the greige goods; that the greige goods and finished fabrics differed in size; and that the greige goods and finished fabrics were sold to different classes of buyers and in different commercial markets. Citing *A. F. Burstrom v. United States,* 44 CCPA 27, C.A.D. 631 (1957), the court held the processing in Canada did not merely amount to alterations under 806.20 because the imported finished fabrics were not the same articles as the exported greige goods since they differed in name, value, appearance, size, shape and use.

The court also relied on *Burstrom,* supra, to dispose of appellant's argument that the Canadian processing merely resulted in an alteration of the goods because both the exported greige goods and imported finished fabrics were woven fabrics of man-made fibers and were classifiable under the same tariff item, i. e., item 338.30. The court distinguished its holding in *Amity Fabrics, Inc. v. United States,* 305 F.Supp. 4, 43 Cust.Ct. 64, C.D. 2104 (1959), that dyeing of fabric is an alteration, by noting that, in the instant case, the Canadian processing resulted in other significant changes. The court further stated:

The court is of the opinion that where, as here, foreign processing of an exported article, to whatever degree, produces such changes in the performance characteristics of the exported article as to alter its subsequent handling and uses over that which earlier prevailed, the resultant product is of necessity a new and different article. [81 Cust.Ct. at 2, 455 F.Supp. at 622.]

*Appellant's Arguments*

In support of his alternative classification, appellant cites the following definition of the phrase "repairs or alterations" from the Treasury Regulations in effect at the time the entries in issue were filed: [4]

---

**3.** Mr. Chace, president of the manufacturer of the goods in question, Berkshire Hathaway Inc. of New Bedford, Massachusetts, testified before the Customs Court that the exportation of the goods to Canada was necessary because the only processor with the proper equipment to accommodate the fabric was located in Canada. During the course of his testimony, Mr. Chace also explained the processing steps performed in the United States which resulted in the manufacture of the greige goods.

**4.** This definition first appeared in 89 Treas.Dec. 263, T.D. 53611 (Sept. 30, 1954). The definition referred to paragraph 1615(g) of the Tariff Act of 1930, ch. 497, Pub.L.No.361, 46 Stat. 674, as amended by the Customs Administrative Act of 1938, ch. 679, Pub.L.No.721, 52 Stat. 1092, to extend to articles exported for alterations the

The term "repairs or alterations" shall be held to mean restoration, change, addition, renovation, cleaning, or other treatment which does not destroy the identity of the article exported or create a new or different article.

According to appellant, this definition means that processing which effects some change or addition to an article can be considered an "alteration" as long as the article remains basically the same. Appellant argues that the articles in question remained basically the same because both the greige goods and finished fabrics were man-made fabrics of polyester fiber and, thus, the Canadian processing steps did not change the essential characteristics of the fabrics.[5]

Appellant further contends a reasonable interpretation of 806.20 contemplates changes in articles which result in advancements in value or improvements in condition and, therefore, the mere fact that the Canadian processing resulted in changes in name, appearance, value, size, shape and use does not require a determination that such processing did not comprise alterations within the meaning of 806.20.

### Appellee's Arguments

In its brief, appellee cites testimony in the record supporting the Custom Court's determination that the greige goods differed from the finished fabrics in name, value, appearance, size, shape and use. Appellee also alleges that the Canadian processing limited the number of potential uses of the greige goods to the single use for the finished fabric, i. e., as curtain material. Further, appellee agrees with the Customs Court's conclusion that where, as here, the foreign processing has created a new article, the fact that the article as exported and the article as imported are classifiable under the same TSUS item is immaterial. Finally, appellee notes that to extend this argument of appellant to its logical conclusion would necessarily mean that had the Canadian processing transformed the fabrics into curtains, wearing apparel or the like, such processing would also be mere alterations because these articles would also be comprised of man-made fabrics of polyester fabric.

### OPINION

■ Appellant correctly contends that simply because intermediate foreign processing of articles of U.S. origin that are subsequently reimported into the United States results in differences in name, value, appearance, size, shape and use for the articles does not require a conclusion that the foreign processing does not comprise "alterations" under TSUS item 806.20. This is self evident from this tariff provision which levies a duty only on the *increase in value* due to the alterations. Similarly, to hold that alterations cannot change the name, appearance, size, shape and use of an article unreasonably restricts the scope of item 806.20.

Being correct on this one point, however, does not save appellant's case because, as noted in *Burstrom,* supra at 31, a "distinction which must be made is between the terms 'repairs,' 'alterations' and 'processing.'"

That such a distinction has been recognized by Congress is apparent from the Customs Simplification Act of 1954, ch. 1213, Pub.L.No.768, 68 Stat. 1137, which extended to certain foreign processing oper-

---

same treatment then accorded to articles exported to be repaired. *See* H.R.Rep.No.1429, 75th Cong., 1st Sess. 6 (1937). This subparagraph was adopted as item 806.20 TSUS as a result of the Tariff Classification Act of 1962, Pub.L.No.87–456, 76 Stat. 72. See *Tariff Classification Study,* Schedule 8, p. 12 (Nov. 15, 1960).

The definition of "repairs and alterations" was deleted from the Regulations by 6 Cust. Bull. 209, T.D. 72–119 (May 2, 1972).

**5.** According to evidence in the record, the fabric was intended to be used as material for making curtains. In his testimony, Mr. Chace stated that the greige goods could be used as curtain material but that it differed from the finished fabrics in resistance to wrinkling and shrinking, drapability, and choice of colors.

ations, the tariff treatment previously accorded to repairs and alterations.[6] The reasons for this amendment were noted by this court in *United States v. Douglas Aircraft Co.,* 510 F.2d 1387, 1390, 62 CCPA 53, 57, C.A.D. 1145 (1975) as follows:

> [I]t appears that, in the case of articles sent by U.S. manufacturers along the Canadian border to Canada for processing and return to the United States for additional processing, duty was imposed on not only the value of the Canadian processing but also on the value of the article in its original exported form. Such treatment was based on subparagraph 1615(g) of the Tariff Act of 1930, as amended by the 1938 Act, with interpretation by the Customs Service of "repairs" and "alterations" being limited chiefly to those of a mechanical nature on equipment such as locomotives and buses. It was objected that imposing duty on the value of the article in its original exported form constituted a duty on American material and American labor. *Hearings on H.R. 5106 Before the House Comm. on Ways and Means,* 83d Cong., 1st Sess., 199–200 (1953).

In addition to that observation, two things are evident from the very language (*see* supra note 6) of the provision. First, it applies to *intermediate* processing operations which are performed abroad as *a matter of course* in the preparation of certain articles. Second, this advantageous tariff treatment for regularly performed intermediate foreign processing is limited to *articles made of metal.*

It follows generally from these two points that repairs and alterations are made to *completed articles* and do not include intermediate processing operations which are performed as a matter of course in the preparation or the manufacture of finished articles. In the instant situation, the operations performed in Canada comprise further processing steps which are performed on unfinished goods and which lead to completed articles, i. e., the finished fabrics, and, therefore, the processing cannot be considered alterations.

This view is consistent with this court's previous interpretation of the term "alterations" in *United States v. The J. D. Richardson Company,* 36 C.C.P.A. 15, C.A.D. 390 (1948). At issue in that case was the question of whether the processing performed in Canada on a United States origin metal wheel rim resulting in flanged rims for importation into the United States constituted "alterations" under paragraph 1615(g).

The court stated:

> It clearly appears from the record that the articles exported to Canada were not parts of machines but were manufacturers of metal. It is true that they had been so processed as to be dedicated to the use of making rims for the T–26 tank. However, they were not completed parts but, on the contrary, required the manufacturing processes hereinbefore referred to in order to complete them as "flanged" rims for their intended use. Broadly, it may be said, as seems to have been held by the trial court, that the term "alterations" of articles means any manufacturing process to which articles may be subjected. *We are of opinion, however, that*

---

**6.** This provision has been incorporated into the TSUS as item 806.30 which provides:

| 806.30 | Any article of metal (except precious metal) manufactured in the United States or subjected to a process of manufacture in the United States, if exported for further processing, and if the exported article as processed outside the United States, or the article which results from the processing outside the United States, is returned to the United States for further processing. . . . . . . . . . . . . . | A duty upon the value of such processing outside the United States (see headnote 2 of this subpart). |

*Congress did not intend by the term "alterations" in paragraph 1615(g), supra, to mean that uncompleted articles, such as those here involved, manufactured in the United States or imported into the United States, could be exported to a foreign country and there manufactured into completed articles such as those in the case at bar, and when returned to the United States, be subject only to duties on the so-called "alterations" provided for in paragraph 1615(g), supra.* [*Id.* at 17. Emphasis ours.]

The case law also includes two examples of foreign processing which merely involved alterations to finished goods. In *Wilbur G. Hallauer v. United States,* 40 CCPA 197, C.A.D. 518 (1953), this court determined that the cleaning, grading, wrapping and packing in Canada of American-grown apples constituted "alterations" within the meaning of the then applicable paragraph 1615(g). Appellant had claimed that no duty should be imposed because "apples went out and apples came back." *Id.* at 201. Although the court did not dispute the fact that the apples were complete when exported to Canada, it concluded that the Canadian operations had converted the articles from bulk apples to a different unit of merchandise, packaged apples, and that a duty could be imposed on the resultant increase in value.

In a case of particular relevance to the instant appeal, the Customs Court in *Amity Fabrics, Inc. v. United States,* supra, held that the dyeing of certain fabrics comprised an alteration under paragraph 1615(g). In that case, velveteen fabric had been dyed a particular color and placed on sale in the United States. The color proved to be unpopular and, as a result, the fabric was exported to Italy, dyed black, and then imported back into the United States and placed on sale. The court concluded that this processing was an alteration of an al-

ready finished fabric to place it in a more marketable condition without either destroying its identity or creating a new article.

In the instant situation, the dyeing and numerous other processing steps are all necessarily undertaken to initially produce the finished fabric and, thus, a result different from that in *Amity,* supra, must be reached.[7]

Finally, we find no merit in appellant's argument that because both the greige goods and finished fabrics are man-made fabrics of polyester fiber and would be classifiable under the same TSUS item, the Canadian processing merely comprised alterations. The irrelevance of such common classification was noted by this court in *Burstrom,* supra at 30, when we stated:

Appellant attempts to distinguish the instant case from *United States v. The J. D. Richardson Company,* 36 C.C.P.A. (Customs) 15, C.A.D. 390. The court there held that unflanged rims or flat bands exported from this country and reimported after being flanged by three pressing operations, had been changed to new articles and had not merely been altered. Here the foreign processing has likewise created new articles and the law of the *Richardson* case applies. Appellant argues that the fact that the exported ingots and the imported slabs, in the instant case, would be dutiable under the same paragraph distinguishes this case from the *Richardson* case where the exported and imported wares were subject to different duties. This difference is immaterial where the foreign processing has created a new article.

Further, to follow appellant's reasoning could lead to the anomalous result that all articles made from the finished fabric would be commonly classified because they would also be man-made fabrics of polyester fiber.

---

7. For another Customs Court opinion holding that certain processing operations did not merely comprise alterations within paragraph 1615(g), *see C. J. Tower & Sons of Niagara, Inc. v. United States,* 45 Cust.Ct. 111, C.D. 2208, 177 F.Supp. 470 (1960), wherein the court reviewed processing steps performed in Canada on American origin cotton greige goods that resulted in finished fabrics of different colors, sizes, porosities, threat distributions, weights, tensile strengths, textures and finishes.

*Conclusion*

The Canadian processing operations did not comprise alterations under item 806.20 TSUS. The judgment of the Customs Court is *affirmed*.

