**EXPORT PACKERS CO.,
LTD., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 87–05–00659 (BN).**

United States Court of
International Trade.

May 20, 1992.

Brownstein Zeidman and Schomer, Steven P. Kersner and Claudia G. Pasche, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Saul Davis, Washington, D.C., for defendant.

## OPINION

NEWMAN, Senior Judge.

### INTRODUCTION

Export Packers Co., Ltd. ("Export Packers") brings this action pursuant to 28 U.S.C. § 1581(a) to contest denial of protests by the United States Customs Service ("Customs") under 19 U.S.C. § 1515, pertaining to Export Packers' importation of frozen, salted liquid egg yolks and dried egg yolks sourced from whole shell eggs and liquid egg yolks of United States and Canadian origin, from its Canadian plant during the period of December 21, 1984 through January 22, 1987.

Before the court for determination are cross-motions for summary judgment, predicated upon a stipulation of facts. The litigants' dispute concerns whether 67.5% of the subject imported frozen, salted liquid and dried egg yolks entering the United States through the port at Pembina, North Dakota were properly classifiable by Customs in accordance with TSUS Items 119.65 and 119.70 as "whole eggs not in the shell, egg yolks, and egg albumen: Dried [and] Other," dutiable at 27 and 5.5 cents per pound, respectively, rather than under TSUS Item 806.20 as "articles exported for repairs or alterations" abroad and returned to the United States, with corresponding duty only as to the value of the repairs or alterations. In connection therewith, Export Packers seeks a refund for purported excess liquidated duties amounting to $182,573.72, plus interest.

Similarly at issue is defendant's counterclaim, under 28 U.S.C. § 1583, challenging the liquidation of 32.5% of the imported frozen liquid egg yolks allegedly accorded erroneous duty-free treatment by Customs under TSUS Item 800.00, and demanding return of the accompanying refund received by Export Packers in the sum of $29,100.00.

### STIPULATED FACTS

1. Export Packers, a corporation organized under the laws of Canada with a manufacturing facility located in Winnipeg, Ontario, Canada is engaged, *inter alia*, in the manufacture and exportation of frozen liquid egg yolks and dried egg yolks. These products are manufactured from whole eggs in the shell and from liquid egg yolks which are derived from Canadian and United States sources.

2. Frozen liquid egg yolks and dried egg yolks manufactured from shell eggs are processed in the following manner at the Winnipeg plant:

a. Bulk quantities of ungraded whole eggs in the shell of Canadian and United States origin are placed in cold storage until 24–30 hours prior to the time that the whites and yolks are to be separated. At that time they are placed in a temperature-controlled room to bring the temperature of the eggs to 13 degrees Celsius.

b. The eggs are transported along a moving processing line for sanitization in a chlorine rinse and candling prior to breaking by an automatic breaking machine. Separation of yolks and whites is performed utilizing gravity and a filtration system. Storage tanks house the separated egg products for purposes of inspection.

c. Refrigerated holding tanks are then filled with commingled liquid egg yolks derived from both U.S. and Canadian shell eggs and liquid egg yolk. The yolks are mixed together with either salt or sugar, depending upon their ultimate use, to ensure that after being frozen the yolks will

pour as a liquid. The mixed product is pasteurized to destroy salmonella and other harmful microorganisms. After mixing, the liquid yolk product is frozen, packaged and palletized for shipment to customers in Canada, Japan and the United States. "Frozen ... Salt Yolk," as it is then categorized in the industry, is destined for the manufacture of salad dressing or mayonnaise.

d. If the liquid yolk product is designated for production as dried yolks, it is forced through atomizers (nozzles) under high pressure into a heated chamber. The heated chamber dries the resulting spray through heat into a powder. The powder is removed from the drier with a sifter and packaged for sale in Canada, Japan and the United States as "Solids ... Dried ... Plain (or Free Flowing) ... Yolk."

3. Export Packers, during this period, also imported unpasteurized liquid egg yolks from the United States which were processed using the same techniques described, *supra,* for shell eggs prior to distribution.

4. All entries of frozen, salted liquid egg yolks made between September 3, 1985 through January 22, 1987 by Export Packers were liquidated by Customs allowing 32.5% of each entry duty free treatment under TSUS Item 800.00. These liquidations occurred in accordance with the instructions and procedures announced by the local import specialist in Pembina, who observed the foregoing process as it occurred at Export Packer's Winnipeg manufacturing facility.

5. Entries made by Export Packers prior to September 3, 1985 were liquidated by Customs under TSUS Item 119.70 without any allowance for liquid egg yolk exported from the United States. In conformance with the recommendations of the Pembina import specialist, all subsequent Item 800.00 reliquidations and corresponding refunds for excess duties paid by Export Packers, where applicable to the subject entries, occurred on April 13 and May 8, 1987, respectively.

6. Three entries dated January 16, 1985, October 15, 1986 and November 2, 1986 of dried egg yolk were liquidated pursuant to TSUS Item 119.65 with no allowance for U.S. liquid egg yolks.

7. On July 5, 1985 Export Packers filed Protest No. 3401-5-00013 and an Application for Further Review with the District Director, U.S. Customs Service, Port of Pembina, North Dakota ("District Director") concerning the liquidation of certain entries of frozen salted egg yolk and dried egg yolk derived from shell eggs under TSUS Items 119.70 and 119.65 rather than Item 806.20. Between October 31, 1985 and March 30, 1987 Export Packers filed ten additional protests based on the same dispute[1].

8. Customs Headquarters Letter 543869, issued by the Director, Classification and Value Division, U.S. Customs Service, Washington D.C., on January 19, 1987 in response to plaintiff's protests and requests for further review, disagreed with Export Packers' claims. On the basis of Customs Headquarters Letter 543869 the District Director, between March 4 and April 16, 1987, denied the entire series of protests filed by Export Packers.

9. On May 7, 1987 Export Packers filed a summons challenging the refusal of Customs to classify frozen liquid egg yolk derived from shell eggs under TSUS Item 806.20. A complaint was filed on June 22, 1987 requesting a refund of alleged excess duties paid in the amount of $182,573.72.

10. On October 7, 1987 a new Pembina import specialist conducted a premises inspection at Export Packers' Winnipeg facility. Following his inspection, the new import specialist sent a report to the National Import Specialist in New York expressing his disagreement with the TSUS Item 800.00 classification made by his predecessor whereby 32.5% of each container of imported yolk entered between September 3, 1985 and January 22, 1987 had been liquidated with a 100% duty free allowance.

1. Protest Nos. 3401-5-000020, 3401-6-000015, 3401-6-000019, 3401-6-000020, 3401-6-000023, 3401-6-000024, 3401-6-000032, 3401-6-000033, 3401-7-000012, and 3401-7-000013.

11. On October 26, 1987 the defendant filed its answer to the complaint. Defendant's answer interposed a counterclaim disputing the refund to plaintiff of $29,100.00 relating to the classification under TSUS Item 800.00 of 32.5% of the subject entries which were determined by Customs to be sourced from liquid yolk exported from the United States.

12. On December 14, 1987 the National import specialist in New York forwarded a report agreeing with the new Pembina import specialist's conclusions. The new Pembina import specialist then orally informed Export Packers' brokers that future entries would not be acceptable unless the entire shipment was classified under TSUS Item 119.70.

## DISCUSSION

### I. Jurisdiction

*Fourteen Entries Pursuant to Protest No. 3401–5–000020*

The United States contests this Court's jurisdiction over fourteen entries currently in dispute covered by Export Packers' Protest No. 3401–5–000020, on the basis that this protest was allegedly filed in excess of 90 days subsequent to liquidation. *See* 19 U.S.C. § 1514(c)(2)(A).

The question of subject matter jurisdiction regarding thirteen of these entries was rendered moot following an Order issued by the Honorable Gregory Carman of this Court granting Export Packers' request to amend its complaint by withdrawing entries 85–144056–3, 85–144368–3, 85–144538–0, 85–145289–4, 85–145837–7, 85–153229–3, 85–153804–5, 85–153805–1, 85–154753–0 (sic)[2], 85–154947–6, 85–155187–6, 85–155188–9 and 85–156079–9, from paragraph 5 of the complaint.

In addition, this action is dismissed with respect to Entry No. 85–145288–1 covered by Protest No. 3401–5–000020 since the court agrees that the protest regarding this particular entry was also filed in excess of the 90 day statutory limit. *See Schering*

*Corp. v. United States,* 67 CCPA 83, 86–88, 626 F.2d 162 (1980); *Noury Chemical Corp. v. United States,* 4 CIT 68 (1982).

*Counterclaim To Recover 32.5% Permitted Duty–Free Under TSUS Item 800.00*

Defendant's counterclaim asserts that Customs erroneously granted TSUS Item 800.00 treatment to the imported entries of frozen salted liquid egg yolk derived from *liquid egg yolk.* Consequently, the defendant seeks $29,100.00 representing the amount refunded by Customs due to the reliquidation of Export Packers' frozen salted liquid egg yolk under TSUS Item 800.00, in accordance with the recommendations of the initial Pembina import specialist.

Export Packers objects to this Court's exercise of jurisdiction over defendant's counterclaim for the reason that: (1) the counterclaim does not concern the same merchandise at issue in Export Packers' action and hence falls outside the parameters established for permissible counterclaims under 28 U.S.C. § 1583 and Rule 13 of the United States Court of International Trade ("USCIT"); and, (2) the counterclaim should actually be classified as a set off, rather than a recoupment, and as such is untimely with respect to the applicable statute of limitations.

(1)

Export Packers insists that jurisdiction is lacking over defendant's counterclaim for the reason that it does not arise from the same claim as Export Packers' challenge regarding Customs' refusal to allow 806.20 treatment for the frozen salted liquid egg yolk sourced from *shell eggs.* Export Packers urges that any argument involving reliquidation of merchandise derived from *liquid egg yolk* pursuant to Item 800.00 is thus not within the scope of the right to counterclaim under 28 U.S.C. § 1583.

This contention has merit. The entries of frozen salted liquid egg yolk comprising the subject matter of Export Packers' complaint involved separate and dis-

---

**2.** The correct Entry No. actually reads 85–154573–0. As corrected, this Entry is dismissed with respect to Protest No. 3401–5–000020.

tinct merchandise, evidenced by the distinguishable classification treatment assessed by Customs when the entries were liquidated. While this Court has authority to hear certain counterclaims pursuant to statute and the rules of this Court, defendant's counterclaim cannot be considered alongside plaintiff's action for classification of merchandise derived from shell eggs because, as explained below, defendant's "claim ... [does not] involve[ ] the imported merchandise that is the subject matter of such civil action." 28 U.S.C. § 1583; USCIT Rule 13(a).

As established *supra,* the genesis of Export Packers' complaint concerns 67.5% of the imported frozen salted liquid egg yolks which were derived from shell eggs and assessed with duty under TSUS Items 119.65 and 119.70. Export Packers, maintaining that said merchandise was properly subject to classification in accordance with Item 806.20, protested Customs' liquidation and commenced this civil action for purposes of obtaining judicial review of Customs' denial respecting said protests.

Plainly, the remainder of the subject entries, representing 32.5% of the frozen salted liquid egg yolks derived from liquid egg yolk, were liquidated in compliance with Item 800.00. But *Export Packers has not contested that liquidation.* Accordingly, any claim by defendant concerning such merchandise and the duties thereon, is considered separate and distinct from the subject matter comprising the instant civil action filed by plaintiff.

Defendant's counterclaim is therefore dismissed for lack of subject matter jurisdiction. Hence, the court need not reach the additional issue regarding whether or not the instant counterclaim is jurisdictionally defective for allegedly exceeding the pertinent statute of limitations.

## II. Export Packer's Claim Under TSUS Item 806.20

The subject entries of frozen, salted egg yolks whereby 67.5% of the imported liquid yolks were assessed with duty under TSUS Item 119.70, and the dried egg yolks under Item 119.65, are precluded from classifica-

tion under Item 806.20. In sum, Export Packers has failed to comply with the mandatory statutory and regulatory conditions precedent for duty assessment in accordance with the latter category.

TSUS General Headnote 11 and Headnote 1 to Schedule 8 disclose that the fulfillment of the rules and regulations promulgated by Customs are mandatory conditions precedent to TSUS classification under Item 806.20.

Specifically, General Headnote 11 provides:

> * * * The allowance of an importer's claim for classification under any of the provisions of the schedules which provide for total or partial relief from duty or other import restrictions on the basis of facts which are not determinable from an examination of the article itself in its condition as imported, *is dependant upon his complying with any rules or regulations which may be issued pursuant to this headnote.*

Emphasis supplied. Further, Headnote 1 to Schedule 8 reads:

> 1. * * * except as provided in headnote 3 to part 1 of this schedule, any article which is described in any provision in this schedule is classifiable in said provision *if the conditions and requirements thereof and of any applicable regulations are met.*

Emphasis supplied.

■ By virtue of 19 C.F.R. § 10.8 entitled "Articles exported for repairs or alterations," Customs directs that a Certificate of Registration, Customs Form 4455 ("CF 4455") (the top portion) *must* be filed with the district director at the port where the articles are exported from the United States abroad, *at the time of exportation,* in order to permit Customs to inspect the merchandise in its condition as exported (§ 10.8(a)). The Customs officer who examines the article in its condition as exported will then endorse the top portion. This action certifies the condition of the merchandise at the time of exportation (§ 10.-8(b)).

Additionally, upon importation of articles entered under the provisions of Item 806.-20, *in connection with an entry*, the importer is required to file: (1) a declaration of the one who performed the repairs or alterations describing the repairs, the amount of the cost, the total value of the article and that no "substitution whatever" had occurred (§ 10.8(e)); (2) *those* Customs-endorsed CF 4455's; and (3) a declaration completed by the owner, importer, consignee or agent bearing knowledge of such facts:

> "that the articles entered in a repaired or altered condition were the *same* articles covered by the Certificate of Registration. This declaration shall also show that the full cost, or (when no charge is made) fair market value of the repairs or alterations were correctly stated in the entry."

(§ 10.8(f)) emphasis supplied. Last, under circumstances where the subject merchandise is "not entered at one time or at one port of entry" a certification by the owner, *etc.*, must be filed stating "that the articles entered in their repaired or altered condition are a portion of the articles covered by such Certificate of Registration" (§ 10.-8(g)).

Nevertheless, Export Packers insists that its imported merchandise should qualify for Item 806.20 treatment. Export Packers reasons that while the foregoing regulations demand mandatory compliance, drawing upon Regulation section 10.112, the court has recognized that the late filing of "a free entry or reduced duty document, form, or statement required to be filed in connection with the entry" is permissible, insofar as the failure to timely file is not found to constitute "willful negligence or fraudulent intent." *See, e.g., E. Dillingham, Inc. v. United States*, 67 Cust.Ct. 226, C.D. 4278 (1971) *mod. on other grounds*, 60 CCPA 39, C.A.D. 1078, 470 F.2d 629 (1972); *Hertvy Co., Inc. v. United States*, 45 Cust.Ct. 210 (1960).

Although Export Packers' premise is technically correct, its reliance upon § 10.-112, given the present facts, is misplaced. The law is well settled that Customs' regu-latory provisions under § 10.8(e), (f) and (g) for securing Item 806.20 treatment at the time of importation, clearly presuppose conformance with the mandatory prerequisites set forth in § 10.8(a) and (b) for the completion and endorsement of documentation during the exportation period. *See F.W. Myers & Co., Inc. v. United States*, 72 Cust.Ct. 133, C.D. 4515 (1974); *H.F. Keeler v. United States*, 38 Cust.Ct. 48, C.D. 1842 (1957), *aff'd*, 45 CCPA 67, C.A.D. 675 (1958).

Indeed, *E. Dillingham, Inc.* and *Hertvy Co., Inc.*, as far as their application respecting the late filing provisions of § 10.-112 are concerned, were specifically explained in *F.W. Myers* to apply only to the portions of the CF 4455 that are required to be completed "in connection with the entry" of the articles—*i.e.*, those documents filled out by the party performing the repairs and alterations abroad and filled out by the importer during the period of entry. Conversely, the *F.W. Myers* court held that the late filing privileges of § 10.112 do not apply to the top portion of the CF 4455, as the top portion must be filed with Customs, and endorsed *at the time of exportation from the United States*, whereas § 10.112 relates *solely* to documents that must be filed "in connection with the entry." 72 Cust.Ct. at 137.

Moreover, and acutely significant under the instant circumstances, it is concluded that § 10.112 is considered entirely "unavailing where the documents are never filed." *F.W. Myers*, 72 Cust.Ct. at 134. Here, Export Packers flatly concedes that it did not file a CF 4455. Equally so, it is evident from the entry papers of record that Export Packers failed to file *any* of the documentation with Customs required under § 10.8, in connection with its importation of frozen, salted liquid egg yolks and dried egg yolks derived from shell eggs.

Such an unjustified failure by Export Packers to submit pertinent documentation, in *any* fashion, addressing the compulsory procedural requirements set forth in § 10.-8(a) and (b) at the very least, bans revival of Export Packers' claim under § 10.112 which operates exclusively as a limited qua-

lifier to remedy filing defects arising under § 10.8(e), (f) and (g).

The record in this case is now closed. That is, the filing and acceptance of the Stipulation by this Court is the equivalent to the completion of the trial record. *See Brookside Veneers, Ltd. v. United States,* 9 CIT 596, 597–98 (1985). Without question, Export Packers was on notice of the United States' defense on this issue since it was first presented in defendant's answer to the complaint in 1987. As a result, Export Packers' consistent failure to submit relevant documentation is deemed fatal to its request for duty assessment under the advantageous cloak of TSUS Item 806.20.

Finally, the court addresses Export Packers' secondary rationale for completely bypassing compliance with § 10.8's mandatory procedures required at the time of export. Export Packers suggests that somehow the court's analysis in *Rhone Poulenc, S.A. v. United States,* 7 CIT 133, 136, 583 F.Supp. 607, 610 (1984) lends credence to Export Packers' determination that any efforts to pursue remedies at the administrative level constituted an exercise in futility, based upon the adverse position taken by the second Pembina import specialist against Item 806.20 treatment respecting plaintiffs' merchandise, and as such could be effectively foregone.

The short of the matter: *Rhone Poulenc* in no way supports the contention advanced by Export Packers. That decision simply precluded a finding of prejudice towards the defendant arising from plaintiff's failure to raise a particular legal argument at the Administrative level, only to be presented later at trial. In contrast, the issue here involves whether the plaintiff importer may neglect to undertake certain mandatory statutory prerequisites prior to bringing a claim seeking tariff classification under the duty-preferred status of TSUS Item 806.20. The answer is in the negative. As such, Export Packers' position is rejected.

## CONCLUSION

Based upon the foregoing findings and determinations, Export Packers' complaint is therefore dismissed in favor of the United States. Judgment shall be entered accordingly.

## JUDGMENT

These cross-motions for summary judgment and defendant's counterclaim on stipulated facts in lieu of trial having been submitted for decision and the Court, upon consideration of the briefs filed and the arguments presented in this matter, having rendered a decision therein; now, in conformity with that decision it is hereby

ORDERED that defendant's motion for summary judgment of dismissal of the complaint be, and hereby is, granted; that defendant's counterclaim be, and hereby is, dismissed, and it is further;

ORDERED, ADJUDGED AND DECREED that this action and counterclaim be, and hereby are, dismissed.