**Slip Op. 99-**72

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| CHEVRON CHEMICAL COMPANY, | |
| Plaintiff, | Before: Pogue, Judge |
| v. | Court No. 95-09-01141 |
| UNITED STATES, | |
| Defendant. | |

[Plaintiff's motion for summary judgment denied. Defendant's motion for summary judgment granted.]

Decided: July 29, 1999

Phelan & Mitri (Michael F. Mitri) for Plaintiff.

David W. Ogden, Acting Assistant Attorney General, Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Bruce N. Stratvert, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; Chi S. Choy, Of Counsel, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, for Defendant.

**OPINION and ORDER**

**POGUE, Judge.**

## I. Introduction

Plaintiff, Chevron Chemical Co., challenges a decision of the U.S. Customs Service ("Customs") denying Plaintiff's protest filed in accordance with section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (1994). The action involves the proper classification for customs duty purposes of Plaintiff's petroleum

derivative, AL-304, under the Harmonized Tariff Schedule of the

United States ("HTSUS").[1]  Jurisdiction is predicated on 28 U.S.C.

_____

[1]The provisions under consideration are as follows:

Chapter 38, Section VI:

| Heading/Subheading | Article Description |
| --- | --- |
| 3817 | Mixed alkylbenzenes and mixed alkylnaphthalenes, other than those of heading 2707 or 2902: |
| 3817.10 | Mixed alkylbenzenes: |
| 3817.10.10 | Mixed linear alkylbenzenes |
| 3817.10.50 | Other |
| | * * * * |
| 3823 | Prepared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included; residual products of the chemical or allied industries, not elsewhere specified or included: |
| 3823.90 | Other: |
| | Other: |
| | * * * * |
| 3823.90.45 | Other: |
| | Mixtures that are in whole or in part of hydrocarbons derived in whole or in part from petroleum, shale oil or natural gas |

§ 1581(a)(1994), and, therefore, Customs' classification is subject to *de novo* review pursuant to 28 U.S.C. § 2640 (1994). This action is before the Court on the summary judgment motions made by Plaintiff and Defendant pursuant to USCIT Rule 56.

Upon liquidation Customs classified the subject AL-304 as a "mixed linear alkylbenzene" under subheading 3817.10.10, HTSUS (1993), and assessed a 17.3% *ad valorem* duty. Plaintiff claims that the merchandise is properly classifiable under the residual provision, subheading 3823.90.45, HTSUS, which describes a broad category of chemical products not specified or included elsewhere,

------

Chapter 98, Section XXII

U.S. Notes

1.  The provisions of this chapter are not subject to the rule of relative specificity in general rule of interpretation 3(a). Any article which is described in any provision in this chapter is classifiable in said provision if the conditions and requirements thereof and of any applicable regulations are met.

| Heading/Subheading | Article Description |
|---|---|
| | Articles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means: |
| | Articles exported for repairs or alterations: |
| 9802.00.40 | Repairs or alterations made pursuant to a warranty |
| 9802.00.50 | Other |

and is assessed a 7% *ad valorem* duty.  Alternatively, Plaintiff maintains that the merchandise is classifiable as articles returned to the United States, after being exported for alterations, and thus classifiable under subheading 9802.00.50, HTSUS.  Under this proposed classification, the merchandise is dutiable at the rate otherwise applicable to the article, assessed only on the cost or value of the foreign alterations.

## II.  Undisputed Facts

Even though there are differences in the factual positions advanced by each party, summary judgment is appropriate in this action because there is no genuine issues of material fact in dispute.

Plaintiff's imported AL-304, is a mixed linear alkylbenzene. See Defendant's Statement of Additional Material Facts As to Which There is No Genuine Issue to Be Tried ("Def.'s Additional Facts") ¶ 1; Plaintiff's Response to Defendant's Statement of Additional Material Facts ("Pl.'s Response") ¶ 1.  Specifically, AL-304 is a mixture of long carbon side-chain mono-linear alkylbenzenes and di-linear alkylbenzenes.   See Plaintiff's Complaint ("Pl.'s Complaint") ¶ 9; Defendant's Answer ("Def.'s Answer") ¶ 9.

The term "alkylbenzene" describes a compound with two major structural components: the "alkyl" component and the "benzene" component.  See Def.'s Additional Facts ¶ 4; Pl.'s Response ¶ 4. The "alkyl" component of the AL-304 is a saturated acyclic hydrocarbon[2] group that has between 20 and 24 carbon atoms.[3]  See

_____

[2]A hydrocarbon is a chemical compound composed only of carbon and hydrogen; the largest source of hydrocarbons is from

Def.'s Additional Facts ¶ 7; Pl.'s Response ¶ 7.  The "benzene"

component consists of six carbon atoms and six hydrogen atoms

forming a benzene ring.[4]   See Def.'s Additional Facts ¶ 5; Pl.'s

Response ¶ 5.

The AL-304 is manufactured for Plaintiff in France from an

alpha olefin[5] fraction that Plaintiff produces in the United

States.  See Def.'s Additional Facts ¶ 9; Pl.'s Response ¶ 9.  The

production process undertaken in France involves the reaction of

benzene with the alpha olefin with the aid of a catalyst

(hydrofluoric acid).[6]  See id.  There is a chemical reaction that

joins a carbon atom of the olefin to a carbon atom of benzene.  See

id.  The result is the subject AL-304.

---

petroleum crude oil.  See MCGRAW-HILL DICTIONARY OF CHEMISTRY 304
(1984).

[3]Plaintiff avers "that the alkyl component of substantially
all (95% or more) of the linear alkylbenzene molecules contained
in AL-304 is a saturated acyclic hydrocarbon that contains
between 20 and 24 carbon atoms, and the alkyl component of a
relatively small portion (5% or less) of the linear alkylbenzene
molecules contained in AL-304 is a saturated acyclic hydrocarbon
that contains approximately 18 or 26 carbon atoms."  Pl.'s
Response ¶ 7.

[4]Plaintiff alleges "that this statement describes linear
(acyclic) alkylbenzene molecules, as opposed to cyclic
alkylbenzene molecules."  Pl.'s Response  ¶ 5.

[5]Alpha olefins are open chain hydrocarbons consisting of
carbon and hydrogen atoms containing at least one double bond in
the alpha position.  See Def.'s Additional Facts ¶ 8; Pl.'s
Response ¶ 8.

[6]Plaintiff claims that "the statements set forth in this
paragraph constitute an oversimplification of the AL-304
production process and omit certain elements and variables of
that process."  Pl.'s Response ¶ 9.

The AL-304 is used to produce alkylbenzene sulfonic acids that, in turn, are used to produce alkylbenzene sulfonates, i.e., detergent additives in lubricating oils for gasolines and other fuels. See Pl.'s Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried ¶ 24; Def.'s Additional Facts ¶¶ 18, 19; Pl.'s Response ¶¶ 18, 19; Def.'s Response to Questions Posed by the Court at 1.

### III.  Standard and Scope of Review

Pursuant to USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT R. 56(d); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

As noted above, there is no dispute concerning the basic characteristics of the subject AL-304.  Both parties agree that the AL-304 (1) is a mixed linear alkylbenzene (2) consisting of carbon side-chain mono-linear alkylbenzenes and di-linear alkylbenzenes (3) with the "alkyl" component containing a carbon group of approximately between 20-24 carbon atoms and (4) the "benzene" component consisting of six carbon atoms and six hydrogen atoms forming a benzene ring and (5) used to produce alkylbenzene sulfonic acids that, in turn, are used to produce alkylbenzene sulfonates.  Accordingly, summary judgment is appropriate here because the material facts as to what constitutes the merchandise

are not at issue.  See Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365-66 (Fed. Cir. 1998).  The Court is then left with the purely legal question involving the meaning and scope of the relevant tariff provisions.[7]  See Baxter Healthcare Corp., No. 98-1343, at 5 (citing Totes, Inc. v. United States, 69 F.3d 495, 498 (Fed. Cir. 1995)); see also Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1391 (Fed. Cir. 1994)(resolving the question of law as to whether particular imported merchandise has been classified under an appropriate tariff provision entails a two step process: (1) ascertaining the proper meaning of the specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed).

---

[7]In United States v. Haggar Apparel Co., 119 S. Ct. 1392 (1999), the Supreme Court held that Customs' interpretation of the HTSUS, as manifested in issued regulations, is entitled to deference under the framework of Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  "Although this case is distinct from Haggar in that no Customs regulations are at issue, we recognize that the Supreme Court's pronouncement may nonetheless raise questions regarding the proper standard of review of Customs' interpretation of the HTSUS." Avenues In Leather, Inc. v. United States, No. 98-1511, at 2 (Fed. Cir. May 20, 1999); see also Baxter Healthcare Corp. of Puerto Rico v. United States, No. 98-1343, at 6 (Fed. Cir. July 2, 1999)(finding when structure of import not in dispute and Customs had not promulgated any interpretive regulations concerning the particular headings and subheadings, proper classification "only requires a determination of the proper meaning and scope of the relevant provisions and a determination of the ultimate classification").  Because we reject Plaintiff's interpretive position with respect to heading 3817, HTSUS, see discussion infra pp. 8-13, and uphold Customs' classification, based on a review of the proper meaning and scope of the relevant provisions, the Court does not further address the standard of review issue here.

## IV.  Discussion

General Rule of Interpretation ("GRI") 1 for the HTSUS provides that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes . . . ."  Gen. R. Interp. 1, HTSUS; see Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed. Cir. 1998); Gen. R. Interp. 6 (providing that the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading, section, and chapter notes); Explanatory Notes for the GRI at 1 ("the terms of the headings and any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification").

### A.  The Subject Merchandise Is Properly Classifiable Under Heading 3817, HTSUS

Heading 3817, HTSUS, covers "[m]ixed alkylbenzenes and mixed alkylnaphthalenes, other than those of heading 2707 or 2902." Additional U.S. Note 2(c) states that "[f]or purposes of headings 2902, 2907 and 3817, the term 'alkyl' describes any saturated acyclic hydrocarbon group having six or more carbon atoms or, subject to note 1 to Chapter 29, any mixtures of such groups averaging six or more carbon atoms."[8]  As noted, the subject AL-304

---

[8] "The section or chapter Notes form an integral part of the Harmonized Tariff System and have the same legal force as the text of the headings."  Trans-Border Customs Services, Inc. v. United States, 18 CIT 22, 25, 843 F. Supp. 1482, 1486 (1994), aff'd, 76 F.3d 354 (Fed. Cir. 1996).  "The function of the Notes is to define the precise scope of each heading, subheading,

is a mixed linear alkylbenzene with a saturated acyclic hydrocarbon "alkyl" component that has between 20 and 24 carbon atoms.  It is undisputed that the AL-304 is not a mixture of alkylnaphthalenes, or a mixture of alkylbenzenes described under HTSUS heading 2707 (weight of aromatic constituents must exceed weight of nonaromatic constituents) or heading 2902 (cyclic hydrocarbons, allowing mixtures of isomers of same organic compound only).  See Mem. Supp. Pl.'s Mot. Summary J. ("Pl.'s Mem.") at 21-22, 30; Def.'s Additional Facts ¶ 16.  Accordingly, the Court finds that the subject AL-304 is expressly provided for under the plain language of subheading 3817.10.10.

Even when merchandise falls within the literal language of the statute, however, such literal interpretation should be rejected if it produces a result contrary to the apparent legislative intent. See Procter & Gamble Mfg. Co. v. United States, 19 CCPA 415, 419 T.D. 45578 (1932), cert denied, 287 U.S. 629 (1932); see also EM Indus., Inc. v. United States, 22 CIT __, __, 999 F. Supp. 1473, 1478-79 (1998)("While construing a statute so as to carry out the legislative intent requires that the court first look to the statutory language itself, that does not mean, however, the court is foreclosed from also considering readily available guidance from the Explanatory Notes as to the intended scope of

_____

chapter, subchapter, and section."  Id. at 26, 843 F. Supp. at 1486.

subheadings.")(citation omitted).[9]

The Explanatory Notes to heading 3817, provide, as follows,

This heading covers **mixed alkylbenzenes** and **mixed alkylnaphthalenes** obtained by alkylation of benzene and naphthalene.  They have fairly long side-chains and are not of the kind mentioned in the second part of the text of heading 27.07.  Mixed alkylbenzenes are used, *inter alia*, as solvents, and in the manufacture of surface-active agents, lubricants and insulating oils.  Mixed alkylnaphthalenes are mainly used for the manufacture of alkylnaphthalene sulphonic acids and their salts.

Harmonized Commodity Description and Coding System, Explanatory Notes (1st ed. 1986)("Explanatory Notes") at 538.

Plaintiff challenges Customs' classification, arguing that the language of heading 3817, when read together with its Explanatory Notes mandates that the subject AL-304 be classified elsewhere. See Pl.'s Mem. at 20.  Thus, Plaintiff maintains, "heading 3817 was not intended to cover mixtures of the type comprising the subject merchandise . . . ."  Id.  Specifically, Plaintiff contends that the chemical industry separates alkylbenzenes into short chain, medium chain, long chain and very long chain alkylbenzenes.[10]  Id.

_____

[9]The Explanatory Notes constitute the Customs Co-operation Council's official interpretation of the Harmonized Tariff System.  The Council was established in 1952 by convention in Brussels.  The Customs Co-operation Council is now known as the World Customs Organization which publishes the Harmonized Commodity Description and Coding System.  It has long been settled that "[w]hile the Explanatory Notes do not constitute controlling legislative history, they do offer guidance in interpreting HTS[US] subheadings." Lonza, Inc. v. United States, 46 F.3d 1098, 1109 (Fed. Cir. 1995).

[10]Plaintiff asserts that "[i]n the chemical family of commercial alkylbenzenes the entire range of carbon side-chain lengths runs from C1 to approximately C30 . . . there are established industrial uses for three main categories of alkylbenzenes, depending primarily upon the lengths of their

at 11-14.  Plaintiff further maintains that the subject AL-304, a mixture of linear alkylbenzenes in the C20 to C24 carbon side-chain range, falls under the "long chain" side-chain category.  Id. at 25.  Therefore, Plaintiff argues that the subject AL-304 is not a mixture of "fairly long" linear alkylbenzenes as described in the Explanatory Notes for heading 3817.  Id. at 27.

When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is the common and commercial meaning, Mita Copystar America v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994), which is presumed to be the same.  See Nippon Kogaku (USA), Inc. v. United States, 69 CCPA 89, 92, 673 F.2d 380, 382 (1982); see also Permagrain Products, Inc. v. United States, 9 CIT 426, 429, 623 F. Supp. 1246, 1248 (1985), aff'd, 791 F.2d 914 (Fed. Cir. 1986).

Here, however, Plaintiff has provided no evidence or authority for its assertion that the chemical industry distinguishes "fairly long" side-chains from long side-chains.  Rather, Plaintiff directs the Court's attention to the use of the modifier "fairly" in the

---

side-chains.  There are 'short chain' compounds, with carbon side-chains in the C1 to C3 range, 'medium chain' compounds, with side-chains in the C11 to C13 range, and 'long chain' compounds, with side-chains in the C16 to C24 range.  The side-chains can be linear or branched, and, for the 'medium chain' and 'long-chain' compounds, there can be one side-chain ('mono-alkyl') or two ('di-alkyl').  There is no significant commercial production of, and there are no established industrial uses for, alkylbenzenes with carbon side-chains in the ranges of C4 to C10 and C14 to C15.  There is limited production of certain 'very long chain' compounds, in the side-chain range of C25-C30 and above, and these compounds typically are used industrially as alternatives to paraffin waxes."  Pl.'s Mem. at 10-11.

Explanatory Notes.  From the mere presence of the term "fairly long," and with no other support, Plaintiff contends that "the tariff recognizes the existence of 'longer' chain compounds that are not properly classified under HTSUS heading 3817."  Pl.'s Mem. at 26.  Essentially, Plaintiff apparently attempts to rely on the Explanatory Notes as evidentiary support for its asserted industry practice and attempts to invoke such industry practice to support its interpretation of the Explanatory Notes.  This circular reasoning, on its own and absent some grounding in fact or authority, does not provide factual support for Plaintiff's position.

Plaintiff also argues that the AL-304 cannot be classified under HTSUS subheading 3817.10.10 because it has properties and characteristics different from other alkylbenzenes covered by heading 3817.  See Pl.'s Mem. at 28.  Specifically, Plaintiff maintains that the AL-304 possesses only one of the four exemplar uses enumerated under the Explanatory Notes for alkylbenzene mixtures that are classified under heading 3817.  Id.  Plaintiff reads the accompanying Explanatory Notes too narrowly.

First, it is irrelevant whether or not AL-304 has side-chain characteristics different from other alkylbenzenes because heading 3817 and subheading 3817.10.10, HTSUS, are *eo nomine* provisions in that they describe goods by "specific names" and ones "known to commerce."  See United States v. Bruckmann, 65 CCPA 90, 94 n.8, C.A.D. 1211, 582 F.2d 622, 625 (1978).  An *eo nomine* provision that

names an article without terms of limitation, absent evidence of a
contrary legislative intent, is deemed to include all forms of the
article.  See Nootka Packing Co. v. United States, 22 CCPA 464,
469-70, T.D. 47,464 (1935).  Although the Explanatory Notes relied
on by Plaintiff describe the alkylbenzenes falling under heading
3817, HTSUS, as having "fairly-long" side chains, there is no
evidence of Plaintiff's asserted industry nomenclature
differentiating the categories of "short, medium, long and very
long" chain alkylbenzenes.[11]  Moreover, there is nothing in the
language of the Explanatory Notes itself to support a distinction
between long and "fairly long" side-chain alkylbenzenes.  Nor is it
otherwise apparent that Congress intended to limit the heading as
Plaintiff argues.  The Court will not read restrictive language
into heading 3817, HTSUS, or accept Plaintiff's interpretation
where it is not supported by the evidentiary record or the
statutory language, and it does not appear that such limitation was
intended.  See, e.g., American Bayridge Corp. v. United States, 22
CIT __, __, 35 F. Supp. 2d 922, 930 (1998)("Had Congress intended
to limit 44.07, Congress would have chosen 'more forceful words to
express that intent'."), judgment, 22 CIT __, 35 F. Supp. 2d 942
(1999), appeal docketed, No. 99-1228 (Fed. Cir. Jan. 28, 1999).

_____

    [11]As noted, the only restriction as to the application of
heading 3817 is found in Additional U.S. Note 2(c) to Section VI,
which defines the term "alkyl" to include hydrocarbon groups that
have six or more carbon atoms.  See discussion supra pp. 8-9.

Second, AL-304 is used exclusively in the manufacture of surface-active agents,[12] one of the uses explicitly enumerated under the Explanatory Notes for heading 3817. Moreover, the list of uses is prefaced with the term "inter alia," which means "among other things." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 635 (1984). By itself, the term "inter alia" demonstrates that the exemplars of the Explanatory Notes were not intended to be exhaustive. The Explanatory Notes simply list examples of the possible applications of mixed alkylbenzenes. Plaintiff's interpretation of the accompanying Explanatory Notes ignores the term "inter alia."

In conclusion, the Court finds that the plain language of subheading 3817.10.10, HTSUS expressly covers the subject AL-304.

### B. The Subject Merchandise Is Not More Specifically Provided For In Heading 3823, HTSUS

Plaintiff also argues that the subject AL-304 is covered by heading 3823, HTSUS, which describes a broad category of chemical products not specified or included elsewhere. See Pl.'s Mem. at 29. Specifically, Plaintiff claims that its merchandise is properly classifiable under subheading 3823.90.45, HTSUS, as a mixture made up "in whole or in part of hydrocarbons derived in whole or in part from petroleum, shale oil or natural gas." Plaintiff directs the Court's attention to the accompanying Explanatory Notes, which provide for the classification of chemical products "whose composition is not chemically defined, whether they are obtained as by-products of the manufacture of other substances

---

[12]See Def.'s Additional Facts ¶ 18; Pl.'s Response ¶; Pl.'s Mem. at 28; Def.'s Mem. at 10.

. . . or prepared directly." Id. at 29 (quoting Explanatory Notes at 541). Plaintiff maintains the AL-304 is an "incomplete or unfinished" sulfonate having the "essential character" of a "complete or finished" sulfonate, which is classifiable under HTSUS subheading 3823.90.45.[13] Id. at 31.

Heading 3823 is a residual basket provision that describes a broad category of chemical products not included elsewhere in the HTSUS. Classification of imported merchandise in a basket provision, however, is appropriate only when there is no tariff category that covers the merchandise more specifically. See, e.g., EM Indus., 22 CIT at __, 999 F. Supp. at 1480 ("'Basket' or residual provisions of HTSUS Headings, such as subheading 3206.49.50, are intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading."); E.M. Chemicals v. United States, 20 CIT __, __, 923 F. Supp. 202, 206 (1996)(finding that subheading 3823.90.29 is a "basket provision" that cannot be applied until other provisions of the HTSUS are examined to determine if the subject merchandise is more appropriately classified elsewhere).

---

[13]The Explanatory Notes direct the classification of petroleum sulfonates under heading 3823, HTSUS, as follows:

> [T]he preparations and chemical products falling here include:
>
> (8) Petroleum sulphonates, not water-soluble, obtained from petroleum or petroleum fractions by sulphonation, for example, with sulphuric acid, oleum or sulphur trioxide dissolved in liquid sulphur dioxide, this process usually being followed by neutralisation.

Explanatory Notes at 542.

As discussed above, AL-304 literally satisfies subheading 3817.10.10, HTSUS. Thus, by the express terms of heading 3823, AL-304 is not described by the heading.

### C.  The Subject Merchandise Is Not Covered Under Heading 9802, HTSUS

The HTSUS allows a duty benefit for imported articles that were previously exported from the United States to be advanced in value or improved in condition while abroad. Specifically, subheading 9802.00.50, HTSUS, describes "[a]rticles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means: Articles exported for repairs or alterations made: Repairs or alterations made pursuant to a warranty: Other . . . ."[14] The duty rate applicable to imported articles qualifying under subheading 9802.00.50, HTSUS, is calculated according to the rate that would

---

[14]Chapter 98 also requires that "any applicable regulations" be met in order to be covered by it. Defendant argued in its memorandum in support of its motion for summary judgment that, "there is no evidence that Chevron ever filed a Certificate of Registration, Customs Form 4455, for the alpha olefins alleged to have undergone merely an alteration abroad." Def.'s Mem. at 15. Defendant added, "[t]his requirement set forth in Customs Regulations, 19 C.F.R. § 10.8, is mandatory." Id. (citing Export Packers Co., Ltd. v. United States, 16 CIT 394 (1992)). Plaintiff responded that the 1993 regulatory requirement of filing a Certificate of Registration at the time of export and subsequent entry, set forth at 19 C.F.R. § 10.8, expressly applied only to merchandise to be classified in accordance with subheading 9802.00.40, HTSUS, which in 1993, covered articles exported for repairs or alterations "made pursuant to a warranty". Pl.'s Reply at 15. "It did not expressly apply to articles to be classified in accordance with HTSUS subheading 9802.00.50, which covered articles exported for repairs or alterations not made pursuant to any warranty." Id. In response, Defendant agreed that 19 C.F.R. § 10.8 is not applicable in this case. See Def.'s Reply at 2.

apply to the articles if imported outside this provision.  The assessment, however, is based only upon the value of the foreign repairs or alterations.[15]  Plaintiff argues that its merchandise is classifiable pursuant to subheading 9802.00.50, HTSUS, as alpha olefins returned to the United States after having been exported to be advanced in value or improved in condition by a process of alteration.[16]  See Pl.'s Mem. at 44-47.  Plaintiff maintains the AL-304 starting material alpha olefins would be classifiable under subheading 3823.90.45, HTSUS.  Id. at 45.

Defendant does not dispute the fact that the subject alpha olefins are both "advanced in value" and "improved in condition" by the foreign processes undertaken in France.  Mem. Supp. Def.'s Mot. Summary J. ("Def.'s Mem.") at 13.  Rather, Defendant argues that there was no alteration here.  See id. at 14.

Changes and additions to an article constitute alterations so long as the article has not lost its identity or has not been converted into something else.  See, e.g., LeGran Mfg. Co. v. United States, 59 Cust. Ct. 58, 62, C.D. 3070 (1967)(finding a new article was created where pattern pieces, labels, thread, and zippers were exported abroad and sewn into unfinished dresses);

---

[15]The value of the foreign repairs or alterations is either the cost to the importer of such change or if no charge is made, the value of such change, as set out in the invoice and entry papers, as long as Customs determines that the amount set out represents a reasonable cost or value.  See Chapter 98, Subchapter II U.S. Note 3(a).

[16]"This tariff classification position is alternative to the position set forth above for classification of imported AL-304 under HTSUS (1993) subheading 3823.90.4500."  Pl.'s Mem. at 45.

Amity Fabrics, Inc. v. United States, 43 Cust. Ct. 64, 68, C.D. 2104 (1959)(holding that dyeing merchandise sent abroad constitutes an alteration because there was no change in the character, quality or texture of the merchandise).

The term "alteration" as it was used in the predecessor to subheading 9802.00.50, HTSUS, Item 806.20, TSUS, was analyzed by the Customs Court in Dolliff & Company, Inc. v. United States, 81 Cust. Ct. 1, C.D. 4755, 455 F. Supp. 618 (1978). There, the domestic loom products made in the United States were exported to Canada as greige[17] goods for further processing and imported back into the United States. The Customs Court denied Item 806.20 treatment to the merchandise because the exported unfinished goods were returned as finished fabrics. Id. at 3-4, 455 F. Supp. at 620-21. The Court of Customs and Patent Appeals affirmed the lower court, 66 CCPA 77, 82, C.A.D. 1225, 599 F.2d 1015, 1019 (1979), holding that "repairs and alterations are made to completed articles and do not include intermediate processing operations which are performed as a matter of course in the preparation or the manufacture of finished articles." Thus, alterations can only be made to finished articles.[18]

_____

[17]Greige is defined as not bleached or dyed; unfinished. See THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 795 (3rd ed. 1992).

[18]This view is also consistent with the court's previous interpretation of the term "alteration" as it was used in the predecessor to Item 806.20, TSUS. In United States v. J.D. Richardson Co., 36 CCPA 15, 16-18, C.A.D. 390 (1948), cert. denied, 336 U.S. 936 (1949), the Court of Customs and Patent Appeals held that unflanged rims were in an "unfinished condition" because they were unsuitable for their intended use as

Plaintiff argues "the alpha olefins exported to France are 'completed goods' for tariff purposes . . . . They are finished alpha olefins, which are discrete chemical compounds of established structure and known properties."  Pl.'s Mem. at 49.  Plaintiff maintains that the foreign processing does not constitute "intermediate processing," as the olefin starting mixture is no more or less "finished" or "complete" than the resulting alkylbenzenes.  Id. at 50.  The Court does not agree.

The Court finds that the process undertaken in France is intermediate processing because the exported olefin fraction is "unfinished."  Plaintiff mistakenly defines "finished" too narrowly.  The question is not whether the alpha olefin fraction is finished for purposes of being manufactured into AL-304 alkylbenzenes.  Rather, the issue is whether or not the exported olefin fraction is a finished product for tariff purposes.  The Customs Court has described finished in terms of how far an item has been processed toward its ultimate use.  See Strickland Enterprises, Inc. v. United States, 64 Cust. Ct. 406, 409, C.D. 4009 (1970)(noting that an item estimated to be fifteen to twenty percent completed is a partly finished article); see also United States v. J.D. Richardson Co., 36 CCPA at 18 (finding that exported articles that are not yet suitable for their intended use are unfinished).  Thus, in order for an article to be "finished" it

_____

exported.  Id. at 18.  Further, the court found that Congress intended only those articles exported in a "finished" condition to be eligible for preferential tariff treatment accorded articles exported for alteration.  Id.

must be suitable for its ultimate intended use.  <u>See, e.g.</u>, <u>Peg Bandage, Inc. v. United States</u>, 17 CIT 1337, 1346 (1993)(finding that because the exported unsewn bandages are unsuitable for their intended use as reusable bandages, the sewing operations performed in Haiti are not alterations), <u>appeal dismissed</u>, 22 F.3d 1106 (Fed. Cir. 1994).  Here, Plaintiff's olefin fraction is "unfinished" for purposes of the production of alkylbenzene sulfonates.  Indeed, Plaintiff concedes that "[t]he alpha olefins do not contain the benzene rings that are contained in the alkylbenzene sulfonic acids and, as such, they first must be processed into AL-304 before they can be further manufactured into alkylbenzene sulfonic acids."[19] Pl.'s Statement Resp. to Questions Posed by the Court (June 9, 1999) at 2.  Because the processing undertaken in France is performed as a matter of course in the preparation of the alkylbenzene sulfonates it constitutes intermediate processing and thus, is not an alteration.  Accordingly, the subject AL-304 is not covered under subheading 9802.00.50, HTSUS, and thus, should be assessed with duty at its full value under heading 3817.

## Conclusion

For the foregoing reasons, the Court finds that U.S. Customs correctly classified Plaintiff's imported AL-304 under subheading 3817.10.10, HTSUS.  Accordingly, Plaintiff's Motion for Summary

---

[19]Moreover, Plaintiff's argument concerning classification of the AL-304 under subheading 3823.90.45, HTSUS, <u>see</u> discussion <u>infra</u> pp. 14-15, rests upon the proposition that the AL-304 is an "incomplete or unfinished" sulfonate.

Judgment is denied.  In turn, Defendant's Motion for Summary judgment is granted and judgment is entered for Defendant.


_____

                                        Donald C. Pogue
                                             Judge


Dated:      July 29, 1999
            New York, New York